Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Benjamin Cooper, Appellant.

Argued April 9, 1976, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Norman H. Stein,* with him *Charlotte V. Neagle,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 22, 1976:

Benjamin Cooper (claimant), a resident of the City of Philadelphia, was recruited by the Buck Hill Falls Co. (employer) to work in a resort not far from Stroudsburg, Pennsylvania. Claimant worked for approximately three months as a utilityman and earned

a salary of $266 a month plus room and board. On or about October 5, 1974, claimant left his job under circumstances which we will discuss in detail later in this opinion.

On February 2, 1975,[1] claimant applied for unemployment compensation and was denied benefits for the waiting week ending February 8, 1975 and the compensable week ending February 15, 1975. He then filed a timely appeal requesting a referee's hearing. Two hearings were held, the first on March 10, 1975, in Philadelphia, at which claimant appeared, and the second on April 4, 1975, in Stroudsburg, at which a representative of the employer appeared. The referee, after reviewing the transcripts of both hearings, affirmed the denial of benefits. The Unemployment Compensation Board of Review (Board) affirmed the referee without taking additional evidence.

Throughout the administrative process, the reason given for the denial of benefits was that claimant was ineligible for benefits under Section 402(b)(1) of the Unemployment Compensation Law[2] (Act) which provides in part:

"An employe shall be ineligible for compensation for any week—

. . . .

"(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . ."

The claimant, of course, bears the burden of proving that his reasons for leaving work were of a necessitous and compelling nature. *Unemployment Com-*

---

[1] Claimant's tardiness in applying for unemployment compensation was explained by the fact that he had been on public assistance in the interim.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1).

*pensation Board of Review v. Kapsch,* 18 Pa. Commonwealth Ct. 456, 336 A.2d 652 (1975).

When the decision of the Board is against the party having the burden of proof, our scope of review is limited to a determination of whether or not the findings of fact are consistent with each other and with its conclusions of law and whether they can be sustained without a capricious disregard of competent evidence. *Unemployment Compensation Board of Review v. Gochenauer,* 21 Pa. Commonwealth Ct. 23, 342 A.2d 504 (1975). A capricious disregard of competent evidence occurs when there is a deliberate disregard of competent testimony which one of ordinary intelligence could not possibly have avoided in reaching the result. *Sherred v. Pittsburgh,* 7 Pa. Commonwealth Ct. 401, 299 A.2d 381 (1973). Our study of the record convinces us that the Board capriciously disregarded competent evidence in making its findings of fact. We find that the Board also erred by adopting the referee's findings based solely on hearsay testimony. We therefore reverse.

For the purpose of our discussion, we will consider separately each of the hearings held before the referees. At the first hearing, claimant testified that he had left work because his immediate supervisor[3] refused to aid him when claimant requested help because he was suffering from an abscessed tooth. Claimant testified that he asked for and was denied a ride to a dentist in the vicinity of the resort, that he was forced to walk to the dentist, and that his supervisor, although requested, did not aid him in returning from the dentist. In addition, claimant testified that he informed his supervisor that the dentist advised claimant to rest in bed for 24 hours following the extrac-

---

[3] The supervisor's surname appears at various places in the record as "Gray", "Bray", "Cray", and "Praid".

tion of his tooth. Claimant asserted that his supervisor responded by telling him to work his regular night shift or be fired. Claimant stated that he worked the shift because he was afraid of being put off the grounds, as others had been, in an unfamiliar and sparsely populated area devoid of public transportation. He further testified that he left the following day because of his treatment by his supervisor and because he was afraid that any further injury or discomfort would be treated in similar fashion.

This testimony standing alone, if believed by the referee, would, in our view, support a conclusion that appellant left his employment for reasons consistent with ordinary common sense and prudence, being based on real, substantial, and reasonable factors which are not imaginary, trifling, or whimsical—in short, reasons of a necessitous and compelling nature. *United States Steel Corporation v. Unemployment Compensation Board of Review*, 18 Pa. Commonwealth Ct. 71, 333 A.2d 807 (1975).

We recognize that a referee is not required to accept as true even uncontroverted testimony. *Edelman v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 275, 310 A.2d 707 (1973). However, a claimant's testimony as to facts within his actual knowledge does qualify as competent evidence.

The referee's findings of fact read as follows:

"1. Claimant was last employed by Buck Hill Falls Co. for three months as a Utilityman at $266.00 per month, plus maintenance. His last day of work was October 7, 1974.

"2. Claimant voluntarily left this employment without giving any reason or notice to the employer.

"3. Prior to leaving, *there is no evidence* that claimant requested medical assistance for an alleged toothache or transportation to get to and from the dentist, which would have been available.

"4. Claimant failed to request a leave of absence.

"5. Claimant was not laid off or discharged and continuing work was available had he chosen to remain employed." (Emphasis added.)

Clearly, finding of fact 3 shows a capricious disregard, as opposed to a mere disbelief of claimant's testimony. Also, in making finding of fact 4, the referee obviously did not consider whether claimant's purported request for a 24-hour recuperation period constituted a request for a leave of absence which was denied.

Findings 2 through 5 are based on testimony received during the second hearing held in Stroudsburg, at which Mrs. Carroll, the employer's personnel director, testified. Neither counsel for claimant nor claimant's supervisor was present, but during a recess in the hearing the referee allowed Mrs. Carroll to telephone the supervisor in order to obtain information regarding the alleged conversations between the supervisor and claimant. As a substitute for the sworn testimony of the only other person with personal knowledge of the events surrounding claimant's departure, this was grossly deficient. We have often held that in situations where the employer's testimony is crucial, such testimony should have been compelled by the referee. *Unemployment Compensation Board of Review v. Stiles,* 19 Pa. Commonwealth Ct. 38, 340 A.2d 594 (1975).

The testimony of Mrs. Carroll, based as it was on a telephone conversation, is the most obvious form of hearsay. While it is true that hearsay, unobjected to, may be given its natural probative effect in an administrative hearing, *Pellegrino v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 486, 303 A.2d 875 (1973), it is equally true that findings based solely on hearsay cannot stand. *Bickling v. Unemployment Compensation Board of Review,*

17 Pa. Commonwealth Ct. 619, 333 A.2d 519 (1975). The only evidence in the record which supports findings of fact 2 through 4 is based on Mrs. Carroll's representation of the supervisor's answers to her questions during the telephone conversation. Mrs. Carroll admittedly had no personal knowledge of the incidents leading to claimant's leaving work.[4] In view

---

[4] Illustrative of the quality of testimony relied on by the referee are the following excerpts from Mrs. Carroll's testimony at the second hearing, upon examination by the referee:

"Q. Now, do you know if the claimant, Benjamin Cooper requested transportation and information about getting to a dentist for treatment because the pain was unbearable and what was he told? I assume from what you said that you don't know? A. I don't. And very often people come to me and I will call a dentist or a doctor. The way we work it up there, if you can not reach your department head, you come to me and if I could possibly help you I do. Q. Was this Mr. Cray the claimant's immediate supervisor? A. Yes he was. Q. This I don't think you have knowledge of either then. Did claimant go to Dr. Speaker [dentist] at Mountain Home on October 4th? How did he get there? Was his tooth extracted? A. I have no knowledge of that. Q. This is the reason that we hoped Mr. Cray would come to this hearing. A. He really— up until yesterday he intended to, but they had a big group coming in and Carl has (inaudible). And not being a driver, that would mean that two people had to pull out and when we're lowely [sic] staffed.

. . . .

"Q. How about this question. Did claimant contact the employer from the dentist's office and request transportation back to the Inn? A. (inaudible). Q. This you should have knowledge of, does the employer have facilities to provide transportation to employees in such emergency situations? I think you've already answered that. Okay. Now this question, did claimant speak with Carl Bray on October 4th after returning from the dentist and inform him that the dentist had ordered him to bed for 24 hours as he had a fever? A. This I'm not sure of. I'll have to check all those dentist things with Carl. Q. Then, you don't know what the claimant was told. A. No. Q. Now this is an important thing, did anyone threaten him that if he didn't work that night that he would be fired?—is that (inaudible)? A. Not in the case of Ben Cooper.

of the capricious disregard of claimant's testimony in this case and the lack of competent evidence to support the referee's findings, we are compelled to reverse.

If it were a—let's say drunk who was drinking (inaudible) but he liked Ben Cooper and Ben was not a drinking type man. Q. Do you know what happened the following morning on October 5th? Have you any knowledge of the events that led up to the actual separation? A. The actual separation was just the disappearance as I understand it, as they all tell me. Q. You have no knowledge of the events on October 5th? A. None. I was there and I don't know what went on. Q. Do you know if the claimant requested a leave of absence at this point? A. Not to my knowledge. Q. (inaudible)? A. There again he would go to Carl Cray first.

. . . .

"Q. Well then are you certain that a leave of absence was not granted? A. I would say I am not certain. I have to be uncertain because I don't know if he was asked for it.

. . . .

"EMPLOYER REPR.: I would like to check (inaudible). If I could call Carl Cray. REFEREE: We'll go off the record (inaudible) to get that information. (Tape off momentarily) REFEREE: We're back on the record in the case of Benjamin Cooper. Mrs. Carroll has talked with Carl Cray by telephone and will state for the record what she learned. Go ahead, Mrs. Carroll. EMPLOYER REPR.: I asked Carl Cray because Referee Osmun had told me things that I didn't know about, I asked Carl the questions that were (inaudible). One was had Ben ever asked about a doctor or a dentist, Carl Cray said no. I said he never mentioned teeth or . . . (inaudible) said never, and that's as far as I continued to go on that. Then I checked with a lady that has lived up there all the time and checked how far Dr. Speaker lives from Buck Hill, which is approximately a mile and a half from Buck Hill, and I think that's about it.

"REFEREE TO EMPLOYER REPR.: Q. Did the claimant, Benjamin Cooper ever ask for transportation to get to a dentist? A. Not to Carl, no. Never mentioned dentist or doctor or (inaudible) to Carl Cray. Q. Never even mentioned the toothache, did he? A. No he did not. Q. Were you able to learn anything more about the actual separation? A. Four days after they last saw him, they decided that they would terminate him, then they checked his room and it was completely cleared out but they waited for 4 days before they terminated him. Four days of not showing up at work and then they decided to terminate him. Q. Did Mr. Cray confirm the fact that

Claimant also raises questions regarding the constitutionality of the procedures followed in this case; however, we find it unnecessary to reach those questions at this time.

We therefore make the following

ORDER

Now, this 22nd day of June, 1976, the order of the Unemployment Compensation Board of Review in the above named case is reversed. The record is remanded to the Board for disposition consistent with this opinion.

Judge KRAMER did not participate in the decision in this case.

---

there was no leave of absence requested to be absent at that time? A. I honestly did not—I forgot to—Q. I think we can assume— no leave was requested, if the claimant didn't indicate to anyone that he was going to leave. A. I would think so. And I'm always reluctant to answer because I don't want to presume anything. Q. Anything else Mrs. Carroll? A. I think that's about it."