B.  Jay  Trout,  Petitioner  *v.*  Commonwealth  of
Pennsylvania,  Unemployment  Compensation
Board  of  Review,  Respondent.

Argued September 13, 1977, before President Judge
BOWMAN and Judges MENCER and BLATT, sitting as a
panel of three.

*James Kearney,* with him *Alan Linder,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE BLATT, December 8, 1977:

B. Jay Trout (claimant) appeals from an order of the Unemployment Compensation Board of Review (Board) which denied him benefits after determining that he was not available for suitable work as required by Section 401(d) of the Unemployment Compensation Law[1] (Law), 43 P.S. §801(d).

The claimant accepted a janitorial job with Total Maintenance Service, Inc. (employer) with the understanding that he would move from his residence in Columbia, Pennsylvania to York County because the job required that he be "on-call" to report to various York County job sites. He did not, however, discuss the time period within which this move was to take place. He worked for approximately three weeks during May and in the early part of June, 1975, reporting to his assigned job sites on time and receiving his assignments through an aunt who resided in York County and who relayed the employer's telephone messages to him. During his last four days of employment, he experienced some difficulties with his automobile, but he still managed to find alternate means of transportation to get to work. On his last day of work on June 2, 1975, however, he was late, and he testified that the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

operations manager who supervised his work suggested that he take a temporary lay-off. This was in spite of his assurances that he would be able to get to work on time in the future as he had in the past without using his own automobile. It was his understanding, he said, that the employer would call him later to advise him as to when to come back to work, but he testified that, when he telephoned the employer approximately ten days later to find out when to report, he was told that he had been replaced. The employer's representative testified that the services of the claimant were terminated because "[h]e had no transportation," and because "he was not living locally where it would be more convenient for him to work for us on a permanent basis."

The claimant applied for unemployment compensation benefits, and the compensation authorities approved his claim for eight weeks of compensation but disapproved benefits for the two weeks immediately following his last working day, holding that his transportation difficulties had made him unavailable for suitable work during that period and so ineligible then for benefits under Section 401(d) of the Law. The employer appealed this determination, and, after a hearing, the referee denied *all* benefits, concluding that the claimant's failure to move to York County constituted willful misconduct under Section 402(e) of the Law, 43 P.S. §802(e), and that this made him ineligible for any benefits whatsoever. The Board, while it affirmed the referee's denial of benefits, held that there was no evidence of willful misconduct but that the claimant was, nevertheless, disqualified for all benefits under Section 402(d) of the Law because he was not available for suitable work.

Section 510 of the Law, 43 P.S. §830, provides that this Court's scope of review in unemployment compensation appeals is limited to questions of law and, ab-

sent fraud, to a determination of whether or not the findings of fact are supported by the evidence, and the claimant argues here that the following findings of the Board are not supported by the evidence:

4. Claimant did not have a reliable telephone contact to be called to work.

5. Claimant did not have reliable transportation from where he resided to his place of employment.

6. The employer terminated claimant's services when he could not be available for work.

With respect to the reliability of the claimant's transportation, the employer's representative testified unequivocally that the claimant had been able to report to work on time:

Q. Did you have any indication that he was not showing up for work?

A. No.

Q. Did you have any indication that he was not showing up for work on time?

A. No.

Moreover, in spite of the claimant's problems with his automobile, he did obtain rides to work with his aunt and a friend, and, with respect to his telephone contact, while there is no direct testimony as to the reliability of the claimant's aunt, the inference is clear that she properly relayed the employer's messages. The employer's representative testified that he had agreed that the aunt's telephone number would be "sufficient for the time being," and, we believe that, in the absence of any specific evidence as to unreliability, the Board clearly erred in finding that the telephone contact was *not* reliable. Finally, in light of the employer's admission that the claimant did, in fact, report to work on time, we find no evidence to support the Board's findings of fact, including not only Findings No. 4 and No. 5 but also No. 6, *i.e.*, that the em-

ployer terminated the services of the claimant because he "could not be available for work." For a claimant to be found "available for suitable work," of course, he must show that he is actually attached to the labor force, *Hunt v. Unemployment Compensation Board of Review*, 8 Pa. Commonwealth Ct. 577, 302 A.2d 866 (1973), and the claimant here did show that he desired to remain in the labor force and that he would have continued in his work had his employment not been terminated by the employer. In fact, he was able to overcome significant transportation difficulties so that he could be available for work. We believe, therefore, that Section 401(d) of the Law would not disqualify this claimant from receiving benefits for any period of time subsequent to the termination of his employment by his employer on June 2, 1975. He was at all times, we believe, available for work.

We agree with the Board that the record contains no evidence of willful misconduct as found by the referee, for, although the claimant did not relocate as he had promised, his failure to do so within three weeks time was not unreasonable, particularly in view of the fact that the employer's representative admitted that the claimant was never told exactly how much time he would be allowed to accomplish the move. We must, however, reverse the Board in its finding that the claimant was not available for suitable work and we will, therefore, remand the case to the Board for a proper calculation of the benefits to be awarded to the claimant.

ORDER

AND Now, this 8th day of December, 1977, the order of the Unemployment Compensation Board of Review denying benefits to B. Jay Trout is hereby reversed, and the record is remanded to the Board for proper calculation and award of benefits.