Syril N. Kiriluk, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 7, 1978, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*James L. Liberto,* for petitioner.

*John T. Kupchinsky,* Assistant Attorney General, with him *Gerald Gornish,* Acting Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, March 13, 1979:

Syril N. Kiriluk (Claimant) appeals the decision of the Unemployment Compensation Board of Review (Board) affirming the referee's decision denying him benefits.

Claimant had been employed by Westinghouse Electric Corporation for approximately ten (10) years at the time of his last day of work on May 11, 1976. The Bureau of Employment Security (Bureau) found that Claimant had been discharged for willful misconduct.[1] After a hearing the referee affirmed the Bureau's decision and concluded that Claimant was discharged for misrepresentation of facts and his overall work record. Although the Board found that Claimant was discharged for misrepresentation of facts *and* his overall work record, it is apparent to us that without the alleged misrepresentation, Claimant would not have been discharged for his overall work record.[2]

The incident which led to the charge of misrepresentation of facts is unusual. On May 7, 1976, Claimant reported to the employer's nurse that he sustained a nose injury while working. Claimant was referred by the nurse to the medical director, who diagnosed a possible nose fracture. When the company's nose specialist could not be located, Claimant was referred to his own physician, Dr. Moman, who recommended corrective surgery. When Claimant returned to work

---

[1] Section 402(e) of the Unemployment Compensation Law (Act) Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

[2] Employer's representative testified to the following disciplinary record:

> June 16, 1972, verbal warning for tardiness; June 20, 1972, verbal warning for absenteeism; June 22, 1972, written reprimand for absenteeism and tardiness; July 25, 1973, verbal warning for safety violation; December 5, 1973, three day disciplinary suspension for carelessness and abuse of company property; January 8, 1974, verbal warning for safety violation; and March 18, 1976, verbal warning for safety violation.

Claimant did not deny that the alleged work violations occurred but said most of them could be explained. In this he was corroborated to some extent by Mr. Tarbuck.

on May 11, 1976, he and his supervisor had a conversation regarding the place where his injury had occurred, and as a consequence of that conversation Claimant was discharged.

At the hearing before the referee, Claimant, his witness, Mr. Tarbuck, Mr. Lenart (the employer's employee-relation assistant) and Mr. Nickl (supervisor of personnel relations for the employer) testified. None of the witnesses except Claimant had first-hand knowledge of how the accident occurred or how it was reported. The nurse, medical director, Claimant's supervisor and Dr. Moman were not called to testify, although Lenart offered to have the case continued so that Claimant's supervisor could testify. Since there was no continuance, we assume that the referee found such testimony unnecessary.

Claimant testified that he bumped his nose at home the night before May 7. While at work on the seventh he dropped a claw hammer in a metal bin, as a consequence of which the hammer bounced up and hit him in the nose at the very same place that he had bumped it the night before. He said that he explained this series of events to the nurse, the medical director, his doctor and his supervisor.

Lenart, the employer's representative, testified as follows:

On May 10 Mr. Kiriluk visited Dr. Moman and he told the doctor that he was hit in the nose at work with an air hammer. The doctor's prognosis was for corrective surgery which was to be scheduled in six to eight weeks. Mr. Kiriluk returned to work on May 11 and an investigation was conducted. The, [sic] his supervisor was unaware that it was an industrial injury. He had information that led him to believe that the injury had occurred outside the plant. When he confronted Mr. Kiriluk with this information,

Mr. Kiriluk admitted that he had been hurt at home but he thought he could save a few bucks by claiming that it was an accident that occurred at work. Mr. Kiriluk was then suspended and subsequently terminated.''

Claimant denied that he told the doctor that he was hit with an air hammer. He denied that he told his supervisor that he could "save a few bucks" by calling this an industrial accident. He said that he thought that he told the nurse that he had bumped his nose the night before the accident occurred.

It will readily appear that all of the employer's testimony is hearsay. As we noted, Lenart offered to have Claimant's supervisor appear at a continued hearing. Nickl testified that the air hammer statement was Dr. Moman's, not his, and that it appeared in Dr. Moman's medical report. Claimant produced two bills from Dr. Moman, both of which stated ''hit in face with hammer.''

There is little doubt that if Claimant intentionally misrepresented the location where his injury occurred, this would constitute willful misconduct. The question before us is whether there is substantial evidence to prove that Claimant did make the misrepresentation of which he is accused. The burden is on the employer to prove willful misconduct. *Gallagher v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 599, 388 A.2d 785 (1978). There was no counsel at the hearing before the referee. Hence, all of the evidence was received without objection. In *Walker v. Unemployment Compensation Board of Review,* 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976), we held that hearsay evidence admitted without objection will be given its natural probative effect and may support a finding by the Board if it is corroborated by any competent evidence in the record but that a finding of fact based solely on hearsay will not stand. Here, the

Board argues that the referee simply did not believe Claimant when he said that he thought that he told the nurse about the incident at home and that the two incidents of being hit on the nose two days in succession were just too coincidental to be true. Although the referee need not accept even uncontroverted testimony as true, a claimant's testimony to facts within his actual knowledge qualifies as competent evidence. *Unemployment Compensation Board of Review v. Cooper,* 25 Pa. Commonwealth Ct. 256, 360 A.2d 293 (1976). In *Cooper,* the testimony before the referee was not unlike that in the instant case. Also, we held in *Cooper* that where the employer's testimony is crucial, that testimony should be compelled by the referee. Obviously, that was not done here.

To summarize, the only person who testified before the referee with actual knowledge of the alleged misrepresentation was Claimant. He denied all of the alleged misrepresentations. Witnesses were available to the party having the burden of proof, but those witnesses were not called. The referee's findings of fact affirmed by the Board rest solely upon hearsay evidence contradicted by Claimant and uncorroborated by other competent evidence.

Since Claimant's employer did not meet its burden of proof, we would ordinarily reverse and remand for the award of benefits. *Trout v. Unemployment Compensation Board of Review,* 32 Pa. Commonwealth Ct. 610, 379 A.2d 1385 (1977). However, since the employer's representative offered to produce a necessary witness at a continued hearing, but the referee failed to grant that request, we are of the opinion that fairness and justice require a remand for the purpose of affording the employer an opportunity to produce testimony which is crucial to a proper determination of the employer's liability.

ORDER

AND Now, this 13th day of March, 1979, the order of the Unemployment Compensation Board of Review, dated November 23, 1976, is reversed and the case is remanded to the Board for a further hearing.