Mary E. Polk, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 14, 1980, before Judges MENCER, CRAIG and WILLIAMS, JR., sitting as a panel of three.

*Edward Sparkman*, for petitioner.

*Charles G. Hasson*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General, for respondent.

OPINION BY JUDGE CRAIG, April 21, 1980:

Claimant Mary Polk appeals from the Unemployment Compensation Board of Review's determination, after remand and rehearing, that she was ineligible for benefits under Section 402(e) of the Pennsylvania Unemployment Compensation Law, 43 P.S. §802(e),[1] the willful misconduct disqualification, because she failed, without good cause, to comply with her employer's order.

Claimant was employed as a community outreach worker for the Haverford Community Center located at 631 North 39th Street, Philadelphia, Pennsylvania. Incidents of violence at the center and a shooting in the gymnasium of the facility on March 1, 1978 precipitated the staff's relocation to a satellite facility a few blocks away for a short period. However, on March 16, 1978, the board of directors of the center's

___

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*.

parent group met and determined that the program be immediately returned to the Haverford Center.

The employer's representative testified that, while the program was located at the satellite facility, safety improvements were made at the center, which included a buzzer system for the door. Periodic surveillance of the building was established, with contacts to a crisis intervention unit and the local police, and a staff member was posted full time at the facility entrance.

On April 21, 1978, the employer sent letters to staff members directing them to report to the Haverford Center on Monday, April 24, 1978, adding, "[T]his memo is to be considered as a termination notice for those failing to return."

Claimant never reported to the Haverford Center. She asserts on appeal, as she did at the remand hearing, that she was afraid to return to the center because her life had been threatened.

The determination of whether an employee's conduct constitutes willful misconduct is made in light of all the circumstances; we evaluate both the reasonableness of the employer's request and the employee's reasons for noncompliance. If there is good cause for the employee's action, it cannot be charged as willful misconduct. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976). In cases like this, where the employee comes forward to justify the violation, the employee has the burden to establish good cause. *Holomshek v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 503, 505, 395 A.2d 708-09 (1979).

Claimant asserts that a murder at the center and a later attack on a staff member, coupled with threats of personal violence, constitute a reasonable basis for her refusal to comply with the employer's order, and, therefore, that her refusal to return to the center does not amount to willful misconduct.

The board specifically found that the employer took measures to insure employee safety at the center and that:

7. Neither claimant nor any of the fellow employees would have been in personal danger had they returned to work at the agency's original location.

The credibility of witnesses and the weight of their testimony are matters for the compensation authorities, who are not required to accept even uncontroverted testimony as true. *Edelman v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 275, 277, 310 A.2d 707-08 (1973).

On this record, we cannot say that the board capriciously disregarded competent evidence or deliberately disregarded competent testimony which one of ordinary intelligence could not possibly have avoided in reaching the result.[2] *Unemployment Compensation*

---

[2] Claimant's testimony in support of her justification for refusing her employer's order to return to the center, was:

Attorney: Okay, why were you asked to relocate?

Claimant: Well, because, . . . the week before we left there was a murder occurred at the Haverford Center and then, one of the staff members was attacked by an intruder.

Attorney: Okay, . . . , were there, . . . , any threats made on any of the. . . .

Claimant: We, we had to call the police in order to leave.

Attorney: Uh hum, okay, were there threats made to any of the, . . . , constituents of the center?

Claimant: Yes, (inaudible) they were threatened too.

. . . .

Attorney: Okay, and what happened in April?

Claimant: In April we were asked to come back to the Haverford Center.

Attorney: Uh hum, okay, and . . . , did you return?

Claimant: No, we didn't.

*Board of Review v. Cooper*, 25 Pa. Commonwealth Ct. 256, 259, 360 A.2d 293-94 (1976).

Proximity to an act of violence is not sufficient to justify claimant's refusal where claimant has not satisfied the finder of fact that she was within the actual scope of danger. Without minimizing the serious psychological impact of nearby violence, we must nevertheless grant that being close to violence affecting another is not the same as being personally in the line of danger. The record does not show that claimant was wholly surrounded by an environment of danger.

Unlike the case of *McLean v. Unemployment Compensation Board of Review*, 476 Pa. 617, 383 A.2d 533 (1978), where the Pennsylvania Supreme Court determined that a claimant's refusal to operate his employer's truck was reasonable under the circumstances because he "justifiably refused to risk his life by relying on a repair shop which had already failed

---

Attorney: Why was that?

Claimant: Because we were afraid to go back. We were afraid for ourself. . . .

Attorney: Okay and as a result of not returning under those circumstances, you were terminated?

Claimant: I was terminated.

Attorney: Okay, did any of the other employees return to that location?

Claimant: No, they did not.

Attorney: Okay, and . . . , what was their reason for not returning?

Claimant: They was afraid for their safety, too.

. . . .

Referee: Alright, . . . , can you tell me, . . . Miss Polk, was, . . . , your fear to return fear for your life?

Claimant: Yes, it was because it was threatened. They said if I went back there, they would, they would get us.

twice to put the truck in a safe condition," here claimant has proved her apprehension, but not an objective cause for it. Claimant did not satisfy the finder of fact that a return to the Haverford Center would endanger her own personal safety.

Claimant also states here on appeal that she was denied equal protection of the laws, as guaranteed by Article III, Section 32 of the Pennsylvania Constitution and the Fourteenth Amendment, Section 1, of the United States Constitution, because all of the other employees who were similarly discharged received unemployment compensation benefits.

There is no evidence in the record that claimant's co-workers received compensation. Claimant has merely made an assertion without any substantiation; we therefore have no basis on which to evaluate her discrimination claim.

Therefore, we affirm the order of the board denying claimant benefits.

ORDER

AND Now, this 21st day of April, 1980, the order of the Unemployment Compensation Board of Review (B-162373-B) dated April 5, 1979, is affirmed.