# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Natalie A. Baxter,                          :
                                            :
                    Petitioner              :
                                            :
          v.                                :     No. 672 C.D. 2015
                                            :
Unemployment Compensation                   :     Submitted:  October 16, 2015
Board of Review,                            :
                                            :
                    Respondent              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[1]
           HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                      **FILED:  February 8, 2016**

Natalie A. Baxter (Claimant) petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) that affirmed the UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law[2] (Law) because she engaged in willful misconduct related to her work.  On appeal, Claimant argues that the Board erred

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work").

in finding her ineligible because Dress for Success (Employer) did not present substantial competent evidence to meet its burden of proving that Claimant committed willful misconduct. Discerning no error, we affirm.

Claimant worked full-time as a boutique coordinator for Employer from July 1, 2013 until she was discharged on September 17, 2014 for lying to Employer's Chief Executive Officer (CEO) about sending an email that Claimant had been directed to send. Claimant filed a claim for UC benefits, which the local UC Service Center granted. Employer appealed, and the matter was assigned to the Referee for a hearing. At the hearing,[3] Employer presented CEO's testimony and documentary evidence, and Claimant testified on her own behalf.

CEO testified as follows. On September 9, 2014, CEO directed Claimant to contact the Professional Women's Group Coordinator (Coordinator), a volunteer employee, to inquire about whom Coordinator had scheduled to speak at a September 20 event, something that was within Claimant's job duties. On September 16, CEO asked Claimant if she had heard from Coordinator, and Claimant responded that she had emailed Coordinator, Coordinator had not responded, and Coordinator was not acting professionally. CEO directly asked Claimant whether she had sent an email to Coordinator the prior week, and Claimant indicated that she had. Because Coordinator had always promptly responded to CEO, CEO questioned Claimant's assertion and emailed Coordinator

---

[3] Two hearings were held. Employer did not appear at the first hearing because its hearing notice was sent to the wrong address; thus, the Referee continued to hearing until Employer received proper notice. (Hr'g Tr., November 12, 2014, at 1-3, R. Item 10.)

2

directly on September 16. CEO stated that Coordinator replied, indicating that she had just received an email from Claimant regarding the speaker and had responded to Claimant. Coordinator's response gave CEO further reason to question whether Claimant had emailed Coordinator the prior week. The next day, CEO used her administrative credentials to access Claimant's email account, including Claimant's sent, received and trash folders, and found no record of an email to Coordinator prior to the one Claimant sent on September 16, seconds after CEO's discussion with Claimant. Following her search of Claimant's email, CEO asked Claimant whether she had sent an email to Coordinator prior to September 16, and Claimant admitted that she had not and did not provide a reason for not having done so. (Hr'g Tr. at 6-8, 15-16, 19-22, R. Item 12.)

Employer has a rule prohibiting "false or derogatory statements that may damage the integrity or the reputation of [the employer] or its employees or clients" and such conduct can lead to immediate termination. (Employer's Handbook at 22.) CEO explained that honesty, integrity and maintaining relationships with its volunteers are very important to Employer. CEO testified that she had warned Claimant on September 9 about being dishonest and lying after Claimant gave CEO two different reasons for being late to work, and CEO told Claimant that lying, particularly about others, would not be tolerated. CEO stated that Claimant demonstrated a pattern of behavior not compatible with Employer's values and that Employer discharged Claimant on September 17 for lying and placing Coordinator's integrity in question. (Hr'g Tr. at 4-5, 7-8, 22-23.)

3

Claimant testified that she had sent multiple emails to Coordinator between September 9 and 12 but had not yet received a response when CEO had asked her on September 16. She could not explain why there was no record of these emails in her email folders and indicated that she had not realized that emailing Coordinator had become a part of her job duties. Claimant denied calling Coordinator unprofessional or admitting to CEO on September 17 that she had not emailed Coordinator before September 16. Claimant admitted that CEO had warned her about not being truthful on September 9, but she did not know that her position was in jeopardy. Claimant indicated that she had wanted to go to her computer to review her emails during the discussion with CEO on September 17, but was not allowed to do so, and she questioned why Coordinator had not been called as a witness. (Hr'g Tr. at 28-33.)

Crediting Employer's evidence, the Referee found the following:

1. The claimant was working full-time as the Boutique Coordinator for [Employer] since July 1, 2013 earning $13.39 per hour.

2. During the week of September 9, 2014, the CEO asked the claimant to email the Professional Women's Group Coordinator regarding an event on September 20, 2014.

3. On September 16, 2014, the CEO asked the claimant if she had emailed the Professional Women's Group Coordinator regarding the event on September 20, 2014 [and] the claimant advised the CEO that she had. The claimant referred to the coordinator as unprofessional and indicated the coordinator never got back to her.

4. The CEO contacted the coordinator herself on September 16, 2014 regarding the event. As a result, the CEO believed the claimant never made contact with the coordinator.

4

5. The CEO researched emails as she [had] administrative access to the employer['s] computer system and found no emails sent to the coordinator by the claimant except one sent to the coordinator on September 16, 2014 within seconds of the email sent to the coordinator by the CEO.

6. The CEO spoke with the claimant on September 17, 2014 to discuss the issue and the claimant admitted to the CEO that she did not email the coordinator earlier.

7. The CEO previously warned the claimant about lying a few days earlier when the claimant advised the CEO that she would be late for work because she missed the bus [but] then gave the CEO a different reason upon her arrival to work.

8. The employer has a policy in which the employer may immediately terminate an employee for making malicious, false or derogatory statements that may damage the integrity or reputation of the employer or its employees or clients.

9. The Professional Women's Group coordinator was in a volunteer position which the employer realized on [sic] maintaining a good reputation with the volunteers.

10. The employer terminated the claimant on September 17, 2014 for lying about the email to the coordinator.

(FOF ¶¶ 1-10.) Based on these findings of fact, the Referee concluded that Employer had met its burden of proving that Claimant committed willful misconduct. The Referee held that Employer was not required to "have an established rule where the behavioral standard is obvious and the employee's conduct is so adverse to the employer's best interests that discharge is a natural result." (Referee Decision at 2.) According to the Referee, Employer established that Claimant disregarded Employer's standards of behavior, which it had a right to expect from its employees, without good cause when Claimant lied about sending the email and, therefore, Claimant was ineligible for benefits. Claimant appealed

5

to the Board,[4] which, after reviewing the record, held that the Referee's Decision was proper under the Law. Accordingly, the Board adopted the Referee's findings and conclusions as its own, incorporated them into its Order, and affirmed the Referee's Decision. Claimant now petitions this Court for review.[5]

Claimant argues on appeal that Employer did not meet its burden of proving that she committed willful misconduct because it presented only CEO's testimony that Claimant did not send Coordinator an email prior to September 16, which testimony was based on hearsay statements made to CEO by Coordinator. According to Claimant, she sent earlier emails to Coordinator, although she could not confirm this because she does not have access to Employer's email records. Claimant contends that CEO's testimony regarding Claimant's email records and Coordinator's alleged non-receipt of an email prior to September 16 cannot support

---

[4] After requesting and receiving a copy of the December 1, 2014 hearing transcript, Claimant questioned the accuracy of that transcript, and a corrected transcript was issued.

[5] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." Johns v. Unemployment Compensation Board of Review, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth.), petition for allowance of appeal denied, 97 A.3d 746 (Pa. 2014). "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings." Western and Southern Life Insurance Company v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." Id. This Court is bound "'to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony'" to determine if substantial evidence exists for the Board's findings. United States Banknote Company v. Unemployment Compensation Board of Review, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting Taylor v. Unemployment Compensation Board of Review, 378 A.2d 829, 831 (Pa. 1977)).

a finding that Claimant did not send earlier emails because Claimant objected to CEO's testimony as being hearsay at the Referee's hearing. Claimant further asserts that CEO's testimony regarding her "search" of Claimant's email account likewise cannot support a finding that Claimant did not send an earlier email because Employer did not establish that CEO was competent to perform such search or the extent of that search.

Section 402(e) of the Law states that an employee is ineligible for UC benefits for any week "[i]n which h[er] unemployment is due to h[er] discharge or temporary suspension from work for willful misconduct connected with h[er] work. . . ." 43 P.S. § 802(e). This Court has defined willful misconduct as:

> (1) the wanton and willful disregard of the employer's interests, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

Guthrie v. Unemployment Compensation Board of Review, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Whether a claimant's conduct rose to the level of willful misconduct is a question of law reviewable by this Court. Docherty v. Unemployment Compensation Board of Review, 898 A.2d 1205, 1209 (Pa. Cmwlth. 2006). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule and its violation." Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997). A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010). Moreover, "[a]n employer has the

7

right to deal with its employees on a non-written basis and the right to expect that reasonable oral requests be carried out by employees." Brady v. Unemployment Compensation Board of Review, 727 A.2d 1199, 1201 (Pa. Cmwlth. 1999). Finally, "[a] disregard of rightfully expected standards of behavior has been described as including a knowing falsehood or misrepresentation to an employer by an employee concerning an employee's work." Groover v. Unemployment Compensation Board of Review, 579 A.2d 1017, 1019 (Pa. Cmwlth. 1990). "[A]n employee's dishonesty constitutes a disregard of expected standards of behavior . . . where the employee's actions are affirmatively deceptive."[6] Id. at 1019-20.

Claimant does not deny that she was reasonably directed to send Coordinator an email on September 9, something she has done in the past, but asserts that Employer failed to establish that: Claimant did not comply with this directive; she lied about having done so; and she called Coordinator unprofessional. Claimant's main argument is that the Board erroneously relied on hearsay evidence (CEO's testimony regarding what Coordinator told her) and/or CEO's search of Claimant's email account where there is no evidence that she was competent to conduct that search. However, after reviewing the record, we conclude that Employer presented substantial competent evidence to support these findings.

---

[6] If the employer satisfies its burden, the burden shifts to the claimant to show that he or she had good cause for the conduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). If a claimant had "good cause for the conduct, it was not willful misconduct." Rossi v. Unemployment Compensation Board of Review, 676 A.2d 194, 198 (Pa. 1996). Here, Claimant does not argue that she had good cause for her actions, only that she sent Coordinator emails as directed and that Employer's evidence is not competent to establish otherwise.

Initially, we note that to the extent that Claimant relies on her own testimony as a basis to reverse the Board's Order, it was Employer's evidence that the Board credited. For example, Claimant denies having admitted to CEO that she did not send Coordinator an email prior to September 16 or calling Coordinator unprofessional, but the Board credited CEO's testimony to the contrary.[7] "As the ultimate factfinder, the Board determines the credibility of witnesses and the weight to be assigned to the evidence." Tapco, Inc. v. Unemployment Compensation Board of Review, 650 A.2d 1106, 1108 (Pa. Cmwlth. 1994). The fact "that [a party] might view the testimony differently than the Board, is not grounds for reversal if substantial evidence supports the Board's findings." Id. at 1109.

Next, we address CEO's testimony about Coordinator's response to CEO's September 16 email. "Hearsay is defined as an out-of-court statement, either oral or written, offered in court for the purpose of proving the truth of the matter contained in the statement." Bailey v. Unemployment Compensation Board of Review, 597 A.2d 241, 243 n.3 (Pa. Cmwlth. 1991). "Hearsay evidence, [p]roperly objected to, is not competent evidence to support a finding," but "[h]earsay evidence, [a]dmitted without objection, will be given its natural probative effect and may support a finding of the Board, [i]f it is corroborated by any competent evidence in the record." Walker v. Unemployment Compensation

---

[7] "The admission of a party opponent is admissible as an exception to the hearsay rule." Dillon v. Unemployment Compensation Board of Review, 68 A.3d 1054, 1060 (Pa. Cmwlth. 2013) (citing Pennsylvania Rule of Evidence 803(25), Pa. R.E. 803(25)).

Board of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). "[A] finding of fact based [s]olely on hearsay will not stand." Id.

The finding in question states "[t]he CEO contacted the coordinator herself on September 16, 2014 regarding the event. As a result, the CEO believed the claimant never made contact with the coordinator." (FOF ¶ 4.) Claimant asserts in her brief to this Court that she objected to CEO's testimony; however, our review of the corrected transcript reveals that, although she questioned why Coordinator was not there to testify, she did not object to CEO's testimony regarding Coordinator's response to CEO's email. CEO explained that, because Coordinator promptly responded to CEO's emails, she questioned Claimant's assertion that she had emailed Coordinator and CEO emailed Coordinator herself. Based on Coordinator's response, CEO decided to investigate the matter further by searching Claimant's email account to ascertain whether Claimant had sent any earlier emails. Our review of this testimony leads us to conclude that it was not presented for the truth of the matter asserted, i.e., that Coordinator had not received an email from Claimant prior to September 16, but to explain why CEO decided to investigate the matter further by searching Claimant's email account and, therefore, is not hearsay evidence.

Finally, Claimant asserts that there was no evidence to establish CEO's competency to search Claimant's email account or the extent of CEO's search. Claimant did not object at the hearing to CEO describing her ability to use her administrative access to search Claimant's emails or to the scope of that search; thus, any challenge thereto was waived. See Commonwealth v. Stots, 261 A.2d

10

577, 578 (Pa. 1970) (stating "the question of the competency of a witness to testify at trial must be raised at the trial, or it will be considered to have been waived and therefore not subject to review on appeal"). Nevertheless, a witness's "testimony as to facts within his [or her] actual knowledge does qualify as competent evidence." Unemployment Compensation Board of Review v. Cooper, 360 A.2d 293, 295 (Pa. Cmwlth. 1976). Here, CEO sufficiently explained her authority and ability to access and search employee emails based on her position as Employer's CEO and indicated that she searched Claimant's sent, received, and trash folders to determine if Claimant had sent any emails to Coordinator prior to September 16. That search resulted in CEO finding only the September 16 email from Claimant to Coordinator, which was sent after CEO's conversation with Claimant. Claimant also argues that CEO's testimony regarding the email search is hearsay. However, CEO's testimony about what she observed in Claimant's email records was not presented for the truth of what any particular email said, but to establish that when she looked at Claimant's emails, there were no emails from Claimant to Coordinator prior to September 16. As such, this was not hearsay. This testimony, along with Claimant's admission to CEO that she had not sent an earlier email, supports the Board's findings that Claimant was not truthful with CEO on September 16 when she told CEO that she had emailed Coordinator the prior week and that Coordinator never got back to Claimant.

Claimant's actions in not complying with CEO's September 9 directive to email Coordinator and then lying about having sent that email and Coordinator's lack of response constitute disqualifying willful misconduct. Brady, 727 A.2d at 1201; Groover, 579 A.2d at 1019-20. These actions were particularly troublesome

11

in light of Employer's work rule against false statements about others and CEO's prior warning to Claimant about being dishonest the week before. Thus, the Board did not err in finding Claimant ineligible for UC benefits.

Accordingly, the Board's Order is affirmed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Natalie A. Baxter,          :
         :
         Petitioner          :
         :
         v.          :    No. 672 C.D. 2015
         :
Unemployment Compensation          :
Board of Review,          :
         :
         Respondent          :

# O R D E R

**NOW**, February 8, 2016, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER, Judge**