Aluminum Company of America, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Argued June 6, 1974, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three.

*Dale E. Williams,* with him *Donald C. Winson, Frederick J. Rerko* and *Eckert, Seamans, Cherin & Mellott,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, August 8, 1974:

This is an appeal filed by the Aluminum Company of America (Alcoa) from an order (decision No. B-113064) of the Unemployment Compensation Board of Review (Board), dated June 14, 1972, in which the adjudication of the Board's referee was affirmed, thereby making William C. Miller (Miller) eligible for unemployment compensation benefits.

This case had its beginning on July 1, 1970, when Alcoa sent a letter to the employes of its New Kensington plant advising them that for economic reasons Alcoa had decided to "phase out jobbing operations" at that plant by March 31, 1971. In addition to the usual statement of regrets concerning this unpleasant news, Alcoa advised its employes that "[e]ach person's situation will be discussed with him by Personnel people during the phase-out period, which will begin as soon as possible." Approximately 1,400 people worked at the New Kensington plant, and the record indicates that it was the intent of the company to eliminate approximately 1,000 jobs.

Miller (born in December 1912) had been employed by Alcoa for slightly more than 33 years at the time of the July 1970 notice letter. He was a semiskilled mechanic receiving a wage of $3.68 per hour. Miller was laid off on March 12, 1971, and he filed an application for unemployment compensation benefits on March 13, 1971. On April 1, 1971, Miller accepted early retirement.

Subsequent to the 1970 notice letter, the United Steel Workers of America, Local 302 (Union), and Alcoa entered into an agreement which provided that the normal method of terminating employes by seniority at the time of shutdown would not be followed, and that em-

ployes with sufficient service would be given the opportunity to elect early retirement. Pursuant to this agreement the employes electing early retirement would receive, in addition to their full pension (in Miller's case $215 per month), a supplemental pension of $100 per month payable until each employe was eligible for maximum social security benefits at age 65. This supplemental payment was to become effective with pension payments on and after April 1, 1971. In addition, the agreement provided that the employes would have the option of refusing early retirement, and in accordance with certain seniority provisions, could "bump"[1] into other jobs which might be available at other Alcoa nearby plants.

The Bureau of Employment Security (Bureau) originally ruled that Miller was eligible for unemployment compensation benefits for the period from March 12, 1971 until April 1, 1971 (the date of his early retirement) but that he was ineligible for benefits after that date. Apparently because Miller's situation was typical, on appeal to the referee, his claim was made the principal one for the establishment of the claims of other employes similarly situated. The referee found (and the record supports) that Miller was led to believe that if he exercised his "bumping" privileges and thereafter retired, he would lose the $100 supplemental benefit mentioned above. Therefore, the referee decided that Miller's retirement was not of "his own free will" and allowed benefits for the period following April 1, 1971. As stated hereinbefore, the Board affirmed the adjudication of the referee.

Our scope of review in unemployment compensation cases is confined to questions of law, and absent fraud,

---

[1] Bumping is the label given the process whereby one employe with more seniority "bumps" or removes another employe with less seniority from a position which is then filled by the employe with more seniority.

a determination as to whether the Board's findings are supported by the evidence. Questions of credibility and the weight to be given evidence are for the Board. Furthermore, the party victorious below should be given the benefit of any inferences which may be reasonably and logically drawn from the evidence. *See Hinkle v. Unemployment Compensation Board of Review*, 9 Pa. Commonwealth Ct. 512, 308 A. 2d 173 (1973).

Before considering the merits of this case, it is first necessary to deal with a procedural irregularity in the record. The caption of this case in the Board's decision reads "IN RE: Claim of William C. Miller, *et al.*" (emphasis added), and appended to the Board's adjudication is a list of 99 names in addition to that of Miller. The Board obviously intended its adjudication to cover the claims of all of the 100 people named on the list. An identical list of 100 names is also appended to the transcript of testimony from the hearing before the referee. However in that list five names have been bracketed by a red pencil with the notation "Did not appeal."[2]

---

[2] The five claimants and their appeal numbers are as follows:

| CLAIMANT | APPEAL NO. |
|---|---|
| Maximim Spak<br>209 Marlborough Dr.<br>New Kensington, Pa. | B-71-8-I-55 |
| Andrew Remper<br>300 S. 10th Avenue<br>Tarentum, Pa. | 71-8-I-56 |
| Max T. Freeman<br>1326 Leishman Ave.<br>New Kensington, Pa. | 71-8-I-57 |
| George E. Hill<br>921 Corbet Street<br>Tarentum, Pa. | 71-8-I-58 |
| Gernard A. Glover<br>1815 Kimball Ave.<br>Arnold, Pa. 15068 | 71-8-I-59 |

Despite this notation, the referee's decision has attached to it a list of 100 names including the five names with the "Did not appeal" notation. Alcoa, in its appeal from the referee's decision stated that it was appealing 95 cases and attached a list of 95 names which was identical to the list before the referee except for the fact that it excluded the five names with the "Did not appeal" notation. The record is made even more confusing by the fact that the Board's adjudication includes the list of 100 names including the five names which Alcoa neglected to appeal.

This Court has no way to determine who made the notation "Did not appeal" in red pencil before the five names on the list before the referee. We also have no way of determining exactly what is meant by that notation. It is possible that the notation is intended to mean that those five individuals did not appeal to the referee from the Bureau. If that is the case, then those five individuals were not before the referee, were incorrectly included in his order and quite correctly not appealed by Alcoa. It is also possible, however, that the notation is intended to show that Alcoa neglected to appeal the cases of five individuals from the decision of the referee. If that is the case, then those five cases were determined by the referee, were not appealed and thus were incorrectly included in the Board's adjudication. It would appear that the five above-noted individuals had their cases determined by either the Bureau or the referee and should not have been included in the Board's decision because either Alcoa did not include the five in its appeal to the Board, or the five never appealed to the referee.

We will now consider the merits of Miller's case. The issue which was presented to the referee, the Board, and to this Court is the same. That is, under the facts of this case, was Miller entitled to unemployment compensation benefits and not disqualified by the provisions

of Section 402(b)(1) of the Unemployment Compensation Law (hereinafter Act), Act of December 5, 1936, Second Ex. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802(b)(1). Section 402(b)(1) of the law reads in pertinent part as follows:

"An employee shall be ineligible for compensation for any week—

. . . .

"(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this Act. . . ." Obviously Miller's case turns on the question of whether or not he "voluntarily left work without cause of a necessitous and compelling nature."

An employe may sustain his burden of showing that his voluntary termination of employment was with cause of a necessitous and compelling nature by demonstrating that his conduct was consistent with ordinary common sense and prudence. *See Zinman v. Unemployment Compensation Board of Review*, 8 Pa. Commonwealth Ct. 649, 305 A. 2d 380 (1973). The circumstances prompting the severance of employment relationship must be "real not imaginary, substantial not trifling" and "reasonable not whimsical." *See Goldstein Unemployment Compensation Case*, 181 Pa. Superior Ct. 255, 124 A. 2d 401 (1956).

Alcoa contends that Miller's termination of employment was voluntarily assumed. According to Alcoa, Miller merely exercised his option to retire early and thereby receive the supplemental pension. Alcoa contends that because Miller could have bumped into another position because of his seniority, he cannot contend that he left work with cause of a necessitous and compelling nature. The problem with Alcoa's position is that the record does not support its various contentions. The record supports Miller's and the Board's

contention that no one at Alcoa ever offered Miller another job. The record further supports the proposition that none of the employes affected by this phase-out operation had any assurance that any job to which the employe might be bumped would last for more than a few weeks or months. At the hearing, Alcoa contended that there was at least one janitorial job (at $3.092 per hour) which Miller could have filled if he had decided to "bump." However, there was no showing that Miller had sufficient seniority to assure him of any janitorial job for any period of time, if someone senior to him also "bumped" for the same position.

From our reading of the record, we have no reservation that the $100 supplemental benefit was offered as an inducement to Alcoa's employes in order to bring about a reduction in the work force by voluntary retirement. Each employe signed a special retirement agreement wherein he exercised his option; but that agreement does not in any way detract from the proposition that Alcoa initiated the work force reduction plan. Alcoa complains that the Board has placed the burden upon it to explain to its employes the rights each had under the bumping process. The record shows that Alcoa voluntarily assumed that burden when in the July 1, 1970 letter it told its employees that each of their individual problems would be handled by someone in Alcoa's personnel office.

The record clearly shows that Miller's decision to retire was consistent with ordinary common sense and prudence. He was offered a concrete benefit as an inducement to retire and was led to believe that he would lose that benefit if he "bumped." In contrast to the concrete benefit offered for retirement, the "bumping" option was presented as a vague and tenuous proposition which would be of short term duration. Under such facts, the Board was correct in its determination that Miller's separation from employment was involuntary.

The stated intent of Alcoa's phase-out procedure was to induce its employees to accept early retirement. Alcoa accomplished that goal by convincing its employes that early retirement was the best course open to them.

Alcoa also argues that Miller and the other claimants were represented by the union and that through the union they voluntarily agreed to the termination of employment. It is true that the union negotiated a special retirement agreement in this case, but the Supreme Court has held that a collective bargaining agreement should not control the determination of retired employes' eligibility for unemployment compensation. See *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 153 A. 2d 906 (1959).

The remaining issue raised by Alcoa, however, is a little more complicated. Either 95 or 100 claims for unemployment compensation benefits were appealed to the referee. In a common-sense approach to this problem, the referee proceeded to hear all of the claims at a series of consolidated hearings. There is no stipulation in the record indicating that Alcoa agreed that a determination of Miller's claim would be dispositive of all the remaining claims. Out of a total of seven findings of fact made by both the referee and the Board, findings of fact nos. 2, 3, 4 and 5 may be construed as relating to all the claimants. However, findings of fact nos. 1, 6 and 7 relate solely to the Miller claim. Neither the referee nor the Board made any specific findings as to each of the other claimants and Alcoa points out in its argument to this Court that the record contains the testimony of several witnesses who related circumstances concerning their employment termination which were factually dissimilar from the circumstances applicable to Miller. For instance, one claimant stated he would have retired in 1970 for health reasons, but decided to stay around for the proposed phase-out in order to obtain the extra $100 supplemental

retirement benefit. One claimant retired prior to the notice letter of July 1, 1970, and therefore was not even involved in the phase-out. Other claimants were union officials who may have had sufficient knowledge of the bumping procedures, availability of jobs and seniority so as to permit them to make a decision which could be determined to be a voluntary termination of employment without cause of a necessitous and compelling nature. To be sure, Section 505 of the Act, 43 P.S. §825, permits the referee or Board to jointly conduct one hearing involving the claims of many employes whose claims are the same or substantially similar. That provision in the statute, however, does not permit the use of such a joint or consolidated proceeding where the results may be prejudicial to any party. At this writing, we have no way of knowing whether the Board would have made the same findings that it made in Miller's case for all of the claimants. The Board did not make a determination that its findings in the Miller case were applicable to all the other claims. For this reason it is necessary for us to remand this matter back to the Board with direction that the Board undertake to determine whether all of the findings made in the Miller claim are applicable to the other claims before the Board, or whether there are different circumstances involved in any of the remaining claims which might affect the claimants' eligibility for benefits. The Board is specifically directed to determine whether each of the claimants terminated his employment subsequent to the July 1, 1970 notice letter under Alcoa's phase-out procedure, whether any claimant was given any assurance of any job to which he could bump for any specified period of time, whether any claimant was clearly advised by the personnel department of Alcoa as to all of his rights under the options available to him, whether any of the claimants voluntarily terminated their employment for reasons other than the phase-out intentions

of Alcoa, and whether any claimant voluntarily terminated his employment for reasons other than the inducement by Alcoa of the $100 supplemental benefit.

In summary, our reading of the record in this case and the applicable law, permits us to conclude that Miller is not disqualified from unemployment compensation benefits under Section 402(b)(1) of the Act. The order of the Board, insofar as it is applicable to Miller, is hereby affirmed; and as a result of the above discussion, we therefore

### ORDER

AND NOW, this 8th day of August, 1974, it is hereby ordered that this entire matter be remanded to the Unemployment Compensation Board of Review, with the exception of the claim of William C. Miller (appeal no. B-71-K-16), in order for the Board to make findings of fact and conclusions of law applicable to all of the other claims involved, to be prepared individually for each claimant or by class of claimants specifically designated; and in order for the Board to determine the present status of appeal nos. B-71-8-I-55, 71-8-I-56, 71-8-I-57, 71-8-I-58 and 71-8-I-59; whether this remand requires additional hearings is to be determined by and in the discretion of the Board.