United States Steel Corporation, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee, and Charles H. Snyder, Intervening Appellee.

Argued February 5, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, MENCER, ROGERS and BLATT. Judge WILKINSON, JR. did not participate.

*James T. Carney,* for appellant.

*Daniel R. Schuckers,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

*Richard F. Kronz,* with him *Lichtenstein & Bartiromo,* for intervening appellee.

OPINION BY JUDGE KRAMER, March 21, 1975:

This is an appeal by United States Steel Corporation (USS) from an order of the Unemployment Compensation Board of Review (Board), dated June 27, 1973, in which the Board affirmed a referee's award of unemployment compensation benefits to Charles H. Snyder (Snyder).

Snyder was employed as a roller at USS's Duquesne Works when, on November 1, 1970, USS temporarily ceased operations at the bar mill in which Snyder worked. Snyder was then given a position as a laborer at a wage of $2.88 per hour, which he held until June 30, 1972, his date of retirement. At the time Snyder was transferred, his wage as a roller was $5.01 per hour, and, on the date of his retirement, a roller's wage was $5.81 per hour. Snyder was 56 years old when he retired and, under normal circumstances, he could have continued working until age 65.

In April of 1972 USS announced that the bar mill in which Snyder had worked would be closed permanently, and Snyder was presented with two options. He could either continue to work as a laborer at the correspondingly lower rate of pay, or he could retire under the company's "70/80 pension plan" if he retired before June 30, 1972.[1] Under this plan, Snyder was to receive his

---

1. USS, in its brief, explains this plan as follows:
   "The pension is known as a 70/80 pension because conditions of eligibility are that the potential pensioner must have

regular pension benefits plus a "supplemental pension" of $105.00 per month, the supplement to end at such time as Snyder reached age 65 (or qualified for social security disability payments). Snyder elected to accept the "70/80 pension" and, in addition, he received a form of severance pay, termed a "special payment," in the amount of $3,014.70. After thus leaving his employment with USS, Snyder applied for unemployment benefits.

This case presents a question of law involving the application of section 402(b)(1) of the Unemployment Compensation Law (hereinafter Act), Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1). The relevant portion reads as follows:

> "An employee shall be ineligible for compensation for any week—
>
>     \*     \*     \*
>
> "(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act. ..."

None of the referee's findings of fact has been challenged by USS, and the only question presented is whether, under the facts of this case, Snyder "voluntarily left work without cause of a necessitous and compelling nature." In resolving this question, we will follow our Supreme Court's holding in *Shay Unemployment Compensation Case,* 424 Pa. 287, 227 A.2d 174 (1967), and consider whether Snyder failed, "without good cause ... to accept suitable work" when he abandoned his laborer's position to accept the early retirement option. *See* section 402(a) of the Act, 43 P.S. §802(a) and *Sproul v. Com-*

at least 15 years of continuous service and (1) attained the age of 55 with combined age and years of continuous service equaling 70 or more, or (2) combined age and years of continuous service equaling 80 or more."

monwealth of Pennsylvania, Unemployment Compensation Board of Review, 14 Pa. Commonwealth Ct. 442, 322 A.2d 765 (1974).

This Court recently confronted a remarkably similar issue in Aluminum Company of America v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, 15 Pa. Commonwealth Ct. 78, 324 A.2d 854 (1974) (hereinafter Alcoa). In fact, the only significant difference between the instant facts and those we considered in Alcoa is that in Alcoa there was nothing in the record to indicate that the claimant had actually been offered a substitute, lower-paying job. In light of the discussion which follows regarding the nature of Snyder's work, we do not believe that this factual difference is critical in the instant case, and Alcoa must control.

As we said in Alcoa, to sustain his burden of showing that his voluntary termination was with cause of a necessitous and compelling nature, a claimant must show that his conduct was "consistent with ordinary common sense and prudence." 15 Pa. Commonwealth Ct. at 84, 324 A.2d at 857; Zinman v. Unemployment Compensation Board of Review, 8 Pa. Commonwealth Ct. 649, 305 A.2d 380 (1973). The forces influencing an employe to end his relationship with his employer must be "real not imaginary, substantial not trifling" and "reasonable not whimsical." Goldstein Unemployment Compensation Case, 181 Pa. Superior Ct. 255, 124 A.2d 401 (1956).

As we noted in Alcoa, supra, we have no doubt that supplemental benefits of the type offered to workers in Snyder's position are an inducement designed to bring about a reduction in the employer's work force through voluntary retirement.[2] 15 Pa. Commonwealth Ct. at 86,

---

2. The fact that the "70/80" plan, or any other benefits granted to Snyder were in some way the product of collective bargaining cannot play a role in our decision under our Supreme Court's holding in Gianfelice Unemployment Compensation Case, 396 Pa. 545, 153 A. 2d 906 (1959). See Alcoa, supra.

324 A.2d at 858. Snyder's only alternative was to continue working as a laborer, and our review of the record leads us to conclude that this position did not constitute "suitable work" under the Act. Snyder was, therefore, free to abandon it without prejudicing his right to receive benefits.

Prior to the shutdown of the bar mill, Snyder was a roller with a job class designation of 27. The "suitable work" offered to Snyder was as a laborer with a class designation of two. Anyone familiar with the operation of rolling mills is aware that a roller is an industrial tradesman of high skill and substantial training. His job requires the exercise of considerable judgment and the acceptance of serious responsibilities, since he must control the movement of hot steel during the process by which it is formed into usable shapes and sizes. A roller is paid accordingly, and the wage differentials noted at the outset of this opinion show the contrast between a laborer's wages and a roller's wages. Section 4(t) of the Act,[3] 43 P.S. §753(t) instructs us to consider, *inter alia,* "prior training and experience" as well as "previous earnings" and "prevailing wage rates in [the claimant's] usual trade or occupation" in determining whether a particular job constitutes "suitable work" under the Act. Considering the nature of Snyder's former position and the wage differential he would have inevitably had to accept as a laborer, we must agree with the Board and

---

3. Section 402(b)(1) of the Act, 43 P.S. §802(b)(1) contains the following proviso:

". . . and . . . in determining whether or not an employe has left his work voluntarily without cause of a necessitous and compelling nature, the department shall give consideration to the same factors, insofar as they are applicable, provided, with respect to the determination of suitable work under section four (t). . . ."

*See Mosley v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 447, 327 A. 2d 199 (1974).

the referee that the laborer's position did not constitute "suitable work." *Shay, supra, and Sproul, supra.*

It can be argued that Snyder did, in fact, work as a laborer from November 1970 until June 1972, and that this indicates that, despite what has just been said, Snyder's new job was "suitable." This ignores the fact that until shortly before his retirement Snyder's reassignment was "temporary" since no decision had been made by USS regarding the long-range future of the bar mill. It should also be noted that during his temporary tenure as a laborer, Snyder was actually receiving more than laborer's wages, under his employer's "Earnings Protection Plan". Under this plan, a reassigned employe who must accept a lower paying job receives 85 percent of his prior average wage rate while working the job with the lower classification. The duration of this protection is a matter of dispute between Snyder's union and USS, but, whatever the resolution of that controversy, it seems clear that there was at least a strong possibility that eventually Snyder might have to accept, for an indefinite period, the wages customarily paid to a laborer and the work customarily performed by laborers. By contrast, the more attractive pension plan option expired on June 30, 1972, and this was a certainty with which Snyder had to contend.

USS cites *Mosley v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 15 Pa. Commonwealth Ct. 447, 327 A.2d 199 (1974), in support of its contention that Snyder had refused "suitable work." The facts of *Mosley* are easily distinguishable from the instant case. In *Mosley* we relied on the claimant's past work experience and concluded that the claimant's final job as a butcher's helper was not substantially different from his previous employment in another slaughterhouse. In the case now before us, we are dealing with a worker who has been offered a transfer from one of the most highly skilled, highly remunerated positions found in a

steel mill to a position as a laborer where his skills are largely irrelevant and the compensation much lower. We also note that in *Mosley*, Judge CRUMLISH pointed out that, with respect to a claimant who has left a job, rather than *refused to work* at a proffered one, changed conditions of employment can overcome an "admission" of suitability implied from the fact that a claimant has actually worked at a job he later contends is unsuitable. In the instant case the announcement of the permanent closing of the bar mill (which was followed quickly by the decision to retire), coupled with the possibility that the "Earnings Protection Plan" would fail to protect Snyder's wages indefinitely, constitute such changed conditions.

In light of the above, we hold that Snyder's decision to accept the inducement offered by USS was "consistent with ordinary common sense and prudence" and did not constitute "a voluntary termination without cause of a necessitous and compelling nature" or a refusal to accept "suitable work."

There is one final procedural matter which must be resolved. Snyder's claim is representative of those made by 26 former employes of the bar mill, all of whom were transferred from skilled positions of some type to less attractive jobs. Both briefs refer to "claimants" as though this case were intended to be finally dispositive of the rights of all 26 employes. USS, however, alleges that the referee (and the Board) made specific findings on the question of suitability only in Snyder's case, and "simply applied the Snyder ruling to [the other claimants'] cases as well." As the above opinion indicates, an inquiry into the suitability of the work offered to these employes is essential under prior decisional law, and we are compelled to remand the cases of those claimants other than Snyder to the Board so that findings of fact and conclusions of law can be made in each individual case.

The record certified to us contains findings and conclusions in intervening appellee Snyder's case only, and we cannot rule on any questions involved in the other 25 cases without such findings and conclusions. *Alcoa, supra* and *Sproul, supra.*

We therefore

ORDER

AND NOW, this 21st day of March, 1975, it is hereby ordered that the order of the Unemployment Compensation Board of Review, dated June 27, 1973, awarding benefits to Charles H. Snyder, is affirmed; and it is further ordered that, with the exception of the claim of Charles H. Snyder, this entire matter is remanded to the Unemployment Compensation Board of Review so that the Board may make findings of fact and conclusions of law applicable to all other claims involved, to be prepared individually for each claimant or class of claimant specifically designated, on records already made, or after such additional hearings as the Board in its discretion may deem necessary.