Blacklick Valley School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 12, 1980, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

*John W. Taylor,* for petitioner.

*Elsa D. Newman-Silverstine,* Assistant Attorney General, with her, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, February 18, 1981:

Blacklick Valley School District (District) appeals from decision No. B-175110 of the Unemployment Compensation Board of Review (Board) dated August 22, 1979 that granted unemployment compensation benefits to Daniel M. Gresh (Claimant). We reverse.

Claimant was last employed for three years by the District as a general music teacher. During the course of his last school year Claimant had defended a charge of aggravated assault made by a student. The charge was dismissed in Court. During the same year, Claimant had received an unsatisfactory work rating which after arbitration was reversed to satisfactory. On March 16, 1979, Claimant submitted his resignation "for personal reasons" effective April 6, 1979. He applied to the Bureau (now Office) of Employment Security (Office) for unemployment compensation benefits. The Office found that the Claimant had voluntarily left his employment for cause of a necessitous and compelling nature and was therefore eligible for benefits under Section 402(b)(1) of

the Unemployment Compensation Law (Law).[1] The District appealed. After a hearing the referee reversed the Office's decision and denied benefits because the Claimant had failed to meet his burden of proving cause of a necessitous and compelling reason to support his resignation. The Claimant appealed. Finding that Claimant had met that burden, the Board reversed the referee's decision. This appeal followed.

The Claimant has the burden of proof to establish that he terminated his employment for necessitous and compelling reasons. *Owen v. Unemployment Compensation Board of Review*, 26 Pa. Commonwealth Ct. 278, 363 A.2d 852 (1976). In order to sustain this burden the Claimant must show that his conduct was consistent with ordinary common sense and prudence and that the circumstances prompting the severance of employment were real, substantial and reasonable. *Aluminum Co. of America v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 78, 324 A.2d 854 (1974).

It is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board, or by the referee as the case may be, are conclusive on appeal so long as the record, taken as a whole contains substantial evidence to support those findings. . . . The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b)(1). Section 402 reads in pertinent part as follows:

An employe shall be ineligible for compensation for any week—

. . . .

(b)(1) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .

giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists. (Citations omitted.)

*Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 355, 378 A.2d 829, 831 (1977).

The issues before this Court are whether the Board's findings of fact are supported by substantial evidence and whether the Claimant sustained his burden to show cause of a necessitous and compelling nature to terminate his employment.

Our Court has consistently held that substantial evidence is evidence upon which a reasonable mind could base a conclusion. *Unemployment Compensation Board of Review v. Tumolo,* 25 Pa. Commonwealth Ct. 264, 360 A.2d 763 (1976).

The crucial findings of the Board are:

On March 16, 1979 the claimant resigned effective April 6, 1979 because he was unable to effectively continue to teach his students at that school.

. . . .

As a result of newspaper reports and a lack of effective dialogue with the administration, the claimant was no longer able to maintain order in his classroom after the charge against him was dismissed.

Claimant's letter of resignation to the Board on March 16, 1979 read as follows:

Due to a number of personal reasons, it is with regret that I submit my resignation, due to become effective at the end of my sick leave on April 6, 1979.

Certainly, nothing in that letter constitutes substantial evidence from which the Board could find that Claimant quit because he could no longer effectively

teach. The phrase "personal reasons" is a flexible one. In *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A.2d 898 (1946), it was said that the phrase connotes, "as minimum requirements, real circumstances, substantial reason, *objective conditions,* palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith." (Emphasis added.) *Id.* at 556, 45 A.2d at 903. In the instant case, there is no *objective* evidence to support the "personal reasons" which allegedly were the cause of Claimant's voluntary resignation.

When Claimant filed his claim for unemployment compensation benefits, he indicated *to the Office* that his reason for leaving his job was:

> The scope of the incompatibility of work relations with his employer was beyond reconcilation [sic].

> The two major causes for my final resignation were: (1) A charge of aggrivated [sic] assult [sic] by a student—this case was taken to court and was eventually dismissed. (2) I was given an unsatisfactory work rating, against which I filed a grievance, which went to the school board and was finally cleared through arbitration.

> With this and many other smaller conditions, including newspaper reports, lack of dialogue with the administration, lack of authority and respect, and just plain physical and mental tension, it was becoming increasingly more difficult to fulfill my teaching assignment to the point where I was losing the effectiveness of my teaching.

Claimant's explanation to the referee regarding the meaning of his words "incompatability of work rela-

tions'' was couched in terms of lack of communication with administrative personnel. When the referee asked him to be more specific, Claimant said he could not maintain any dialogue with Superintendent Craney, but the Claimant also stated that Mr. Craney retired in June of 1978, nine months *before* Claimant resigned. Concerning other members of the administrative staff, Claimant admitted that there was dialogue with Mr. Craney's successor, but he says that he was afraid to discuss classroom problems with that individual because ''he would use them against me eventually.'' Claimant never explained what he meant by those words. With respect to his direct supervisor, the principal of the school, Claimant says, ''There is very little dialogue with him.'' Again, there was no elaboration. Finally, with respect to the question of lack of dialogue, Claimant said that the assistant principal was ''helpful in discipline problems from time to time'' but did not have the authority that the principal or superintendent would have. We conclude that such testimony is not substantial evidence to prove incompatability of work relations.

In its reasoning, the Board says that Claimant was rendered substantially unable to effectively carry out his teaching duties because of the criminal charge brought against him by a student. Claimant was *acquitted* of that charge. Had he been found guilty, that circumstance may have rendered him ineffective but we fail to see how an acquittal would lead to that conclusion. The Board also states that newspaper reports concerning the criminal charge rendered Claimant ineffective as a teacher. There is absolutely nothing in Claimant's evidence about newspaper reports except a reference to a clipping submitted to the Office which bears the headline ''Assault Case *Dismissed.*'' (Emphasis added.) Rather than rendering Claimant *in*effective, it would seem that such

publicity would reenforce his authority in the class-room. The Board also noted that the Claimant received an unsatisfactory work rating which, after arbitration, was reversed to a satisfactory rating. Again, we would be of the opinion that since the Claimant was successful in the arbitration proceeding, it would render him more rather than less effective in the classroom.

Finally, the Board concludes that where a teacher by reason of circumstances beyond his control finds that he is ineffective, he has no recourse but to terminate his relationship. Assuming that conclusion to be an accurate statement of the law, this Court fails to find any circumstances in the instant case which were beyond Claimant's control *and* which rendered him ineffective.

Our careful review of Claimant's testimony before the referee indicates that his real problem was his inability to maintain discipline in the classroom, a circumstance which we simply cannot find to be beyond Claimant's control nor do we find it to be justifiable cause for his resignation.

Being well aware that it is the Board's prerogative to determine the credibility of witnesses and the weight to be attached to their testimony, we nevertheless conclude on the basis of the Claimant's own testimony that the Board's critical findings of fact are not based upon substantial evidence and that the Board erred when it found that Claimant had met his burden of proving cause for his resignation of a necessitous and compelling nature.

## Order

And Now, this 18th day of February, 1981, Decision No. B-175110 dated August 22, 1979, of the Unemployment Compensation Board of Review is reversed and unemployment compensation benefits to Daniel M. Gresh are denied.