Jerry W. WHORTON, Jr., Relator,

v.

**DEPARTMENT OF HEALTH & HUMAN SERVICES, Department of Economic Security, Respondents.**

No. C2–85–35.

Court of Appeals of Minnesota.

June 4, 1985.

Gregg M. Corwin, St. Louis Park, for relator.

Carl B. Mitchell, Asst. Regional Atty., U.S. Dept. of Health & Human Services, Chicago, Ill., for Dept. of Health & Human Services.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator appeals from the Commissioner of Economic Security's determination that he was discharged for misconduct and is disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2) (1984). We affirm.

## FACTS

Relator Jerry Whorton was employed from June 30, 1971 as a Consumer Safety Officer in the Minneapolis District Office of the Food & Drug Administration (FDA), a component agency of the United States Department of Health and Human Services. He was responsible for conducting on-

site inspections of producers and manufacturers of products within the jurisdiction of the FDA.

During his employment, relator received regular merit raises and performance evaluations indicating his performance was satisfactory. On May 10, 1982, he received one disciplinary reprimand.

On January 31, 1984 at a meeting with the employers' supervisory personnel, relator was confronted with discrepancies between his reports and his activities as observed by other persons. On February 10, 1984, another meeting was held to allow relator to respond to the charges regarding his conduct. On February 14, 1984, a formal proposal for removal was issued to relator. On April 23, 1984, a decision removing him from his employment effective April 24, 1984 was issued. The discharge was for misconduct, including relator's false statements and false representations about his inspection activities. The discharge concluded relator (1) represented that he had personally collected surveillance samples when others had collected them, (2) inaccurately placed times of inspection on his notices of inspection, and (3) added inspection times to the FDA copy after an inspection was completed.

Relator argued that any misconduct was unintentional and insignificant. Relator also argued his supervisor did not take his medical condition into account.

Whorton was removed from federal employment under the provisions of 5 U.S.C. § 7513 and 5 C.F.R. § 752. After a hearing before an arbitrator pursuant to a collective bargaining agreement, relator was reinstated without back pay.

In response to relator's claim for unemployment compensation benefits, a Department of Economic Security appeal referee held that relator was involuntarily separated from his employment for reasons other than misconduct. At the hearing, relator admitted his failure to observe the taking of samples and personally inspect machinery referred to in the inspection reports. He denied the alleged discrepancies in the times of inspection on inspection reports.

He claimed he was never directed to take samples personally and that the employment manual did not require it. Relator's reasons for not indicating inspection times included that it was very cold, his pen did not work, his watch contained no numbers, and his watch ran fast. He denied the various discrepancies between times reported by him and those indicated in affidavits procured by the FDA from the persons inspected. Relator also testified that he had recently sought psychiatric counseling.

The employer produced testimony by the Director of Investigations and three other inspectors about required and accepted practices in taking samples and completing notices of inspection.

The matter was appealed by the Department of Health and Human Services to the Commissioner on September 7, 1984. The arbitration award finding for relator was provided to the Commissioner after oral argument. The Commissioner, in a decision dated December 7, 1984, reversed the appeals tribunal and found that Whorton was discharged from his employment for misconduct. The Commissioner chose not to be bound by the decision of the arbitrator. He determined the arbitrator's decision was based upon the terms of the collective bargaining agreement and not Minnesota unemployment services law. The Commissioner noted that exhibits, documents and testimony submitted to the arbitrator were not part of the record in the employment claim. Finally, the Commissioner held the arbitrator's decision, even if accepted into evidence under stipulation, did not have a res judicata or collateral estoppel effect.

The Commissioner found relator deliberately failed to carry out his employment responsibilities. He found relator failed to follow the employer's policies and procedures for collecting samples. He rejected relator's testimony that he was not instructed by the employer on the proper technique for obtaining samples. The Commissioner also found that relator did not properly inspect an elevator company.

The Commissioner came to the "inescapable conclusion" that relator, on various occasions, did not carry out his responsibilities and that personal inspection or collection was the "very essence" of relator's job. The Commissioner found that relator intended to hide incomplete inspections and unacceptable work performance.

## ISSUE

Does the record support the determination of the Commissioner of Economic Security that relator was discharged for misconduct and disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2)?

## ANALYSIS

The general public policy of the unemployment system is to provide benefits to "persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1984). Claimants of unemployment compensation are disqualified from receiving benefits if they come within one of the disqualifying conditions set forth in Minn.Stat. § 268.09, subd. 1 (1984), including misconduct. *Id.* subd. 1(2).

In *Tilseth v. Midwest Lumber Company,* 295 Minn. 372, 204 N.W.2d 644 (1973), the Minnesota Supreme Court adopted the following definition of misconduct:

> The intended meaning of the term 'misconduct' is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct'.

*Id.* at 374–75, 204 N.W.2d at 646. Misconduct also encompasses conduct demonstrating a lack of concern by the employee for his job. *King v. Little Italy,* 341 N.W.2d 896, 899 (Minn.Ct.App.1984).

The Commissioner found that relator's falsifying of inspection reports and the method by which he falsified the reports to be misconduct. We agree. Not only did relator permit employees of the inspected businesses to draw samples of feed for chemical inspection, he did not personally inspect machinery. He added incorrect times of inspection on his reports using carbon paper in an attempt to make his inspection reports appear proper.

As the Commissioner noted, relator worked with little or no supervision and non-compliance was largely undetectable. *See Auger v. Gillette Company,* 303 N.W.2d 255, 257 (Minn.1981). Relator owed a duty to honestly and properly conduct inspections. Both the labor arbitrator and the Commissioner of Economic Security held that the personal inspection is the "essence" of relator's job. To have permitted someone else to conduct an inspection without supervision and to falsify inspection reports evinces willful disregard of the employer's interest as was held to be misconduct in *Tilseth.*

Relator's argument that his misconduct is somehow related to his emotional and medical condition is not supported by the record.

## DECISION

The record supports the decision of the Commissioner of Economic Security that relator was discharged for misconduct. Relator was properly disqualified from the receipt of unemployment compensation benefits pursuant to Minn.Stat. § 268.09, subd. 1(2).

Affirmed.