**RESERVE MINING CO., Relator,**

v.

**Audrey N. ANDERSON, Commissioner of Economic Security, Respondents.**

No. C2–85–1198.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Review Denied Jan. 17, 1986.

Raymond L. Erickson, Duluth, for relator.

Audrey N. Anderson, pro se.

Hubert H. Humphrey, III, State Atty. Gen., James P. Barone, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by RANDALL, PARKER and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

Reserve Mining Co. ("Reserve") appeals from a determination by the Commissioner of Economic Security that respondent Anderson was involuntarily discharged from employment and is therefore entitled to unemployment compensation benefits. We affirm.

## FACTS

On November 16, 1984, Anderson was notified by Reserve that she would be laid off November 30, 1984. On November 19, Reserve offered Anderson the opportunity to retire early under Reserve's 70/80 retirement plan. That plan is available to employees who are at least 55 years old and have worked at Reserve for 15 or more years, or whose age and years of service add up to 80. Anderson was then 55 years old and had worked at Reserve for 17 years.

Early retirement under the plan is allowed under the following conditions:

- An employee's continuous service ends because of a permanent plant, department or subdivision shutdown, layoff, or physical disability,
- An employee is absent from work due to layoff or physical disability and the company determines that return to work is unlikely, or
- The employee and the company agree to 70/80 retirement under mutually satisfactory conditions.

Reserve's employees are given incentives to retire early under the plan which include a $330 monthly payment of supplemental benefits until age 62, full life insurance, health insurance and surviving spouse benefits. Those incentives are available regardless of the reason for early retirement.

Although Anderson had expressed an interest in the 70/80 plan, she decided to accept early retirement only after notification of the layoff.

Following the layoff, Anderson applied for unemployment compensation benefits. A claims deputy awarded benefits, and Reserve appealed. A department referee affirmed, concluding that Anderson's separation was involuntary. The referee also noted that a claimant may not be disqualified from receiving benefits as a result of actions which occur after a separation from employment. Although Anderson's actual

date of separation occurred after she decided to retire, the referee found her decision was made only after notification of the layoff.

Reserve appealed, and a Commissioner's representative affirmed the referee's decision, noting:

Simply put, the claimant is not unemployed because of retirement, but because the employer had no further work for the claimant to perform. * * * The claimant took the retirement because of unemployment, not the other way around.

\* \* \* \* \* \*

The employer here caused the unemployment by notifying the claimant of lay off. There is absolutely no showing in this case that the claimant would be unemployed but for the notification of lay off.

\* \* \* \* \* \*

The fundamental question to be asked is "Why is the claimant really unemployed?" The claimant is unemployed because of the notification of lay off.

Reserve has appealed from the Commissioner's decision.

### ISSUES

1. Did the Commissioner's representative base his decision upon a statute which refers to actions occurring after a claimant's separation from employment?

2. Was Anderson's election to retire voluntary, thereby disqualifying her from the receipt of unemployment compensation benefits?

3. Does the charge of benefits to Reserve's employer's experience rating account violate equal protection?

### ANALYSIS

#### I.

The respondent Commissioner claims that Anderson must be allowed benefits because her retirement occurred after her layoff. The Commissioner cites Minn.Stat. § 268.09, subd. 1(5) (1984), which provides:

An individual who was employed by an employer shall not be disqualified for benefits under this subdivision for any acts or omissions occurring after his separation from employment with the employer.

Indeed, this court in *Reserve Mining Co. v. Cooke*, 372 N.W.2d 796 (Minn.Ct.App.1985), recently held that this provision allows a person to receive benefits if he or she retires after a layoff.

This case is distinguishable from *Cooke* because although Anderson was not to be laid off until November 30, she elected on November 28 to accept early retirement. In *Clark v. K-Mart*, 372 N.W.2d 847 (Minn. Ct.App.1985), this court held that the actual date of termination, not the notice of resignation, was determinative. Here the actual date of termination was two days after Anderson elected to accept early retirement. Therefore, application of Minn.Stat. § 268.09, subd. 1(5), in this instance is questionable.

■ Although the referee relied on Minn.Stat. § 268.09, subd. 1(5), the Commissioner's representative did not. The Commissioner's representative determined that Anderson's decision to retire was not voluntary. The Commissioner's representative is not limited to reviewing the referee's legal conclusions, but may apply the law which he or she feels is correct under the circumstances. *Nelson v. Bemidji Regional Interdistrict Council*, 359 N.W.2d 38, 40 (Minn.Ct.App.1984), *citing Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 462, 209 N.W.2d 397, 401 (1973); *Ramirez v. Metro Waste Control Commission*, 340 N.W.2d 355, 357 (Minn.Ct.App. 1983). We believe the Commissioner's decision to rely upon the voluntary-involuntary distinction in this instance was correct.

#### II.

■ The Minnesota legislature has declared that unemployment compensation reserves are intended to be used "for the benefit of persons unemployed through no fault of their own." Minn.Stat. § 268.03 (1984). Consistent with this policy, Minn.

Stat. § 268.09, subd. 1 (1984), provides that an individual is disqualified from receiving benefits if he or she "voluntarily and without good cause attributable to the employer discontinued his employment with such employer."

"Voluntary quitting" has been defined as "the discontinuing of employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom he has separated." *Bergseth v. Zinsmaster Baking Co.*, 252 Minn. 63, 65–66, 89 N.W.2d 172, 174 (1958).

The legislature has specifically determined that a separation from employment should not be considered "voluntary" when "(t)he individual left employment *because* he had reached mandatory retirement age and was 65 years or older." Minn.Stat. § 268.09, subd. 1(2)(d) (1984) (emphasis supplied). Reserve argues that since "exceptions expressed in a law shall be construed to exclude all others," Minn.Stat. § 645.19 (1984), therefore any retirement must be considered voluntary if it is not mandatory and due to an employee's attainment of age 65 or older.

Reserve's argument might be persuasive, were it not for the fact that Anderson did not leave because she was retiring, but because she was being laid off. We believe that whether or not Anderson's separation was "voluntary" should be determined by the point at which she was notified she would be laid off. At that point, the decision regarding her separation was not voluntary on her part.

The Commissioner's decision that Anderson's retirement was not voluntary is consistent with decisions from other jurisdictions which have held that an election to retire should not be considered voluntary when the employee's only alternative is a layoff or other reduction in work. *See, e.g., White v. Director of Division of Employment Security*, 382 Mass. 596, 416 N.E.2d 962 (1981) (if employee reasonably believed that he would be laid off if he kept working, his acceptance of early retirement, along with certain additional incentives, would not be considered voluntary);

*Wailuku Sugar Co. v. Agsalud*, 65 Hawaii 146, 648 P.2d 1107 (1982) (employee's choice of early retirement after notification of a pending layoff was held not voluntary); *Aluminum Co. of America v. Commonwealth, Unemployment Compensation Board of Review*, 15 Pa.Cmwlth. 78, 324 A.2d 854 (1974) (employee's acceptance of a one-time special offer of early retirement, including a supplemental pension, was held to be involuntary when the employer convinced the employee that it was the best course—the only other course was a layoff or a vague and tenuous "bumping" provision which would have resulted in the employee's loss of supplemental payments). *Cf. Mshar v. Review Board*, 445 N.E.2d 1376 (Ind.App.1983) (employee who accepted early retirement when his full time job was eliminated did not voluntarily leave without good cause); *Fisher v. Levine*, 36 N.Y.2d 146, 365 N.Y.S.2d 828, 325 N.E.2d 151 (1975) (early retirement held voluntary where employer wished to reduce his work force but employee could not have been laid off); *York v. Review Board*, 425 N.E.2d 707 (Ind.App.1981) (early retirement held voluntary where employee merely feared he would be laid off otherwise).

Reserve argues:

[N]owhere does the Respondent-Commissioner address, let alone characterize [Anderson's] retirement as a volitional act. Nowhere does the Respondent-Commissioner attempt to evaluate [Anderson's] decision to terminate her employment relationship with [Reserve] in favor of a retirement.

This claim is without merit. The Commissioner's representative clearly affirmed the referee's determination that Anderson's termination was involuntary. Moreover, in a memorandum, the representative indicated that the termination was involuntary by stating: "The fundamental question to be asked is 'Why is the claimant really unemployed?' The claimant is unemployed because of the notification of lay off."

Because Anderson elected to accept early retirement only after she was informed that she would be laid off, we agree with

the Commissioner's determination that her separation was involuntary. We arrive at this conclusion with some hesitation, since we are aware that Reserve was under no specific obligation to offer Anderson early retirement with its attendant supplemental benefits. Indeed, it does seem somewhat unfair to allow Anderson unemployment compensation benefits while she is already taking advantage of the supplemental benefits which Reserve so generously provided. Nonetheless, we believe our decision comports with the purposes of the unemployment compensation laws, which were adopted to benefit those persons "unemployed through no fault of their own." Minn.Stat. § 268.03 (1984). It is for the legislature to determine whether unemployment compensation should be eliminated if a former employee is also receiving retirement benefits.

### III.

Minn.Stat. § 268.09, subd. 1(4) (1984), provides that benefits paid to an individual "shall not be used as a factor in determining the future contribution rate of [an] employer" if they are paid because, *inter alia;*

> The individual left employment because he had reached mandatory retirement age and was 65 years of age or older.

Reserve argues that if its experience rating account is charged when an employee is permitted to voluntarily retire, while another employer's account is not charged if an employee is required to retire at age 65 or older, the legislature has created an unfair classification which violates Reserve's right to equal protection under the state and federal constitutions.

Reserve's argument rests upon the assumption that Anderson's retirement was voluntary. Since her retirement was not voluntary, but was the result of the layoff, Reserve's equal protection argument fails.

### DECISION

Unemployment benefits were properly awarded to an employee who chose to retire early only after being notified of a pending layoff. Charging the employer's experience rating account for those benefits does not violate equal protection.

Affirmed.