William A. FISKEWOLD, Relator,

v.

H.M. SMYTH CO., INC., Commissioner of Jobs and Training, Respondents.

No. CO–88–2588.

Court of Appeals of Minnesota.

May 23, 1989.

David L. Ramp, Minneapolis, for relator.

Joseph C. Powell, Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by SHORT, P.J., and KALITOWSKI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Upon learning that he would be laid off in two days, relator William Fiskewold immediately quit his temporary job with respondent employer. A Commissioner's representative with the Department of Jobs and Training concluded Fiskewold was disqualified from receiving unemployment compensation benefits because he had "voluntarily quit his job without good cause attributable to his employer." We affirm the disqualification for the two-day period of time prior to Fiskewold's effective layoff date, but reverse the total disqualification for the period of time subsequent to the layoff.

## FACTS

Relator William Fiskewold began working as a temporary employee for the respondent H.M. Smyth, Co., Inc. (Smyth) in July 1988. On Thursday, July 28, 1988, Fiskewold received written notice that he would be laid off two days later, Saturday, July 30. Fiskewold, unhappy about the scheduled layoff, left work that day.

Fiskewold reopened a prior claim for unemployment compensation benefits, and his claim was initially granted. Smyth appealed to a referee with the Department of Jobs and Training, who conducted a hearing. Following the hearing, the referee issued his decision denying Fiskewold's claim for benefits. The referee determined that Fiskewold voluntarily discontinued his employment without good cause when he left two days before the scheduled layoff date.

Fiskewold appealed to a Commissioner's representative, who affirmed the referee's findings and decision. Fiskewold has obtained review of the Commissioner's decision by writ of certiorari. We affirm in part and reverse in part.

## ISSUE

Did the Commissioner's representative err by determining that Fiskewold voluntarily discontinued his employment and by totally denying Fiskewold unemployment compensation benefits?

## ANALYSIS

Minn.Stat. § 268.09, subd. 1(a) (1988) provides that an individual is disqualified from receiving unemployment compensation benefits if the individual "voluntarily and without good cause attributable to the employer discontinued employment with such employer." An employer has the burden of proving that the employee's separation was voluntary. *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977).

The test of voluntariness is whether the employee exercised his free will or choice in the decision to separate from employment. *Seacrist v. City of Cottage Grove*, 344 N.W.2d 889, 891 (Minn.Ct.App.1984). In *Bergseth v. Zinsmaster Baking Co.*, 252 Minn. 63, 89 N.W.2d 172 (1958), the supreme court defined "voluntary quitting" as "the discontinuing of employment because the employee no longer desires to remain in the relationship of an employee with the employer from whom he has separated." *Id.* at 65–66, 89 N.W.2d at 174 (citation omitted).

In *Reserve Mining Co. v. Anderson*, 377 N.W.2d 494 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Jan. 17, 1986), an employee who had received notice of a pending layoff elected early retirement. The *Anderson* court determined that because the employee had elected early retirement only after she was notified of the layoff, her separation was involuntary. The court reasoned:

> Anderson did not leave because she was retiring, but because she was being laid off. We believe that whether or not Anderson's separation was "voluntary" should be determined by the point at which she was notified she would be laid off. At that point, the decision regarding her separation was not voluntary on her part.

*Id.* at 497.

Fiskewold cites the above language in support of his position that the actual cause of his unemployment was the notice

of layoff; therefore his separation was not voluntary. The *Anderson* case is instructive, and somewhat benefits Fiskewold's position, but is not controlling because the company there had offered the employee the option of early retirement, which she elected. An option to early retirement is not involved here. However, the language of *Anderson,* indicating that knowledge of an impending layoff is a factor when determining the issue of "voluntariness," gives support to relator's position. The precise issue before us has not been decided in Minnesota. However, Fiskewold's position is supported by decisions from several jurisdictions.

In *Johnston v. Florida Department of Commerce,* 340 So.2d 1229 (Fla. Dist. Ct. App.1976), an employee was informed that she was being discharged from her employment, but was told she could work for two more weeks. The employee decided to leave the same day, instead of staying for the remaining two weeks. The Florida court stated:

> [W]here an employer notifies its employee that his or her employment is being definitely terminated as of a given date, the employee has not "voluntarily left his employment without good cause attributable to his employer" if he or she chooses not to work during all or part of the period between notification and the date given by the employer as the date of termination. In such a situation the employer has fired the employee; the employee has not discharged himself, but rather, being faced with the inevitable, has decided to leave before what might be called the notice period is up. In a case of that kind, the period of voluntary unemployment is that portion of the notice period (the notice period being the time, if any, between notice of discharge and actual discharge) during which the employee chooses not to work. The employee is ineligible to receive unemployment benefits during the notice period, for he could continue on the job if he wished. The period of involuntary unemployment begins with the date which the employer designated as the termination date when it gave the employee notice. If the employee is otherwise eligible for unemployment compensation benefits, his leaving work after he was given definite notice will not deprive him of those benefits during the period of involuntary unemployment.

*Id.* at 1230.

Decisions from other jurisdictions employing similar reasoning include *McCammon v. Yellowstone Co., Inc.,* 100 Idaho 926, 607 P.2d 434 (1980); *Poteat v. Employment Security Commission of North Carolina,* 319 N.C. 201, 353 S.E.2d 219 (1987); *Carlson v. Job Service of North Dakota,* 391 N.W.2d 643 (N.D.1986)[1]; *Elizabeth v. Caldwell,* 160 Ga.App. 549, 287 S.E.2d 590 (1981), *cert. denied* (Ga. Jan. 7, 1982); and *Department of Labor and Industry v. Unemployment Compensation Board of Review,* 133 Pa.Super. 518, 3 A.2d 211 (1938).

We recognize that courts in New York, Arizona, and Louisiana have reached the opposite conclusion, holding that an employee who resigns upon learning of a pending discharge is disqualified from receiving unemployment compensation benefits. *See Mastro v. Levine,* 52 A.D.2d 708, 382 N.Y.S.2d 589 (N.Y.1976); *Ferguson v. Arizona Dept. of Economic Security,* 122 Ariz. 290, 594 P.2d 544 (Ct.App.1979); *Henderson v. Administrator, Dept. of Labor, Office of Employment Security,* 488 So.2d 1061 (La.Ct.App.1986). However, we believe the Florida court's analysis in *Johnston* is the more persuasive, particularly in light of our supreme court's indication that the Minnesota unemployment compensation laws are "remedial in nature and must therefore be liberally construed to effectuate the public policy of Minn. Stat. § 268.03 (1980) that unemployment reserves be used 'for the benefits of persons unemployed through no fault of their own'". *Smith v. Employers' Overload Co.,* 314 N.W.2d 220, 221–22 (Minn.1981) (citations omitted).

---

1. Subsequent to the *Carlson* opinion, the North Dakota legislature revised its unemployment compensation laws to specifically state that an employee who quits in anticipation of layoff or discharge is deemed to have left voluntarily. 1987 N.D. Sess. Laws ch. 598, § 1.

We note that employers like Smyth will suffer no prejudice by our decision. Where an employer has chosen to terminate an otherwise eligible employee and has notified the employee of a future separation date, the employer knows and accepts an upcoming liability for unemployment compensation benefits. To completely relieve that employer from the responsibility to pay legitimately earned unemployment compensation benefits simply because the employee has resigned two days before the known separation date results in an unearned windfall to the employer. It does not result in a reasonable or equitable construction of unemployment compensation law.[2]

The case of *E.H. Schrupp & Associates, Inc. v. Stansberry*, 412 N.W.2d 808 (Minn. Ct.App.1987) is distinguishable. There, a seasonal employee, realizing that the work season was almost over, *requested* (for his own economic reasons) his employer to lay him off prior to the end of the season. The employer had not notified the employee of a specific layoff date. In affirming the Commissioner's determination that the unemployment was "voluntary", we stated:

> Stansberry was not notified that he was being laid off, and the "cause" of his unemployment was not a pending layoff, but a voluntary decision on his part to leave.

*Id.* at 810.

By this opinion, we do not state that any employee may quit a job upon being notified of a specific layoff date, however far in the future, and remain fully qualified for unemployment benefits following that layoff date. Nor do we attempt to establish a bright line threshold, whereby an employee may quit a job within "x" number of days of a pending separation and remain qualified for unemployment benefits once that number of days has elapsed. Each situation must be examined on a case-by-case basis. What we state here is that the better policy is not to require Fiskewold to forfeit all legitimately earned unemployment benefits merely because he chose not to work his last two days.[3] We find the interpretation advanced by the employer, requiring complete forfeiture of benefits, has unequitable, if not punitive aspects. Unemployment compensation law need not be construed that harshly to effectuate its purpose.

## DECISION

On these facts, Fiskewold's disqualification is limited to the short period of time prior to the effective date of his layoff. Following that date, he is qualified to receive unemployment compensation benefits.

Affirmed in part and reversed in part.

SHORT, Judge, dissents.

SHORT, Judge (dissenting).

I respectfully dissent. Minn.Stat. § 268.09, subd. 1 (1988) requires disqualification of the relator from receiving unemployment compensation benefits because he voluntarily discontinued his employment with H.M. Smyth Co., Inc. The legislature has provided certain specific exceptions to those disqualifying conditions. Anticipation of a layoff is not listed in the statute. Exceptions expressed in law shall be construed to exclude all others. Minn.Stat. § 645.19 (1988). It is not our role to create an additional exception for an employee who quits two days before a layoff.

Since the relator did not quit his job with good cause attributable to his employer, I would affirm the decision of the commissioner's representative.

---

**2.** Although it is not part of our reasoning, we note that Smyth may not suffer any liability by our decision today, since Smyth does not appear to be a "base period" employer liable for benefits. *See* Minn.Stat. § 268.04, subd. 2 (1988).

**3.** Fiskewold concedes that he may not receive benefits until after July 30, the layoff date.