**Joseph C. BARON, Relator,**

v.

**LENS CRAFTERS, INC., Commissioner of Jobs and Training, Respondents.**

No. C5–93–1922.

Court of Appeals of Minnesota.

March 29, 1994.

Peter H. Berge, St. Paul, for Joseph Baron.

Lee B. Nelson, Kent E. Todd, St. Paul, for Commissioner of Jobs and Training.

Considered and decided by LANSING, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

LANSING, Judge.

This is an appeal from a final denial of unemployment compensation following two affirmations of qualification. Although the record may be sufficient to support the final determination of misconduct, we hold that applying a subsequent legislative amendment to reverse a double affirmation is a retroactive application that requires reversal.

## FACTS

Lens Crafters employed Joseph Baron from October 1991 until December 1992 as a professional relations manager. Baron was discharged for failing to train all store managers in a process of "doctor detailing" and for falsely stating that he had.

Baron filed a claim for unemployment compensation benefits, and a claims adjudicator affirmed his request. Lens Crafters appealed the decision to a referee, and the referee again affirmed the granting of unemployment benefits. The referee issued the decision in June 1993. At that time the statutory "double affirmation clause" provided that an applicant who received two affirmations of unemployment benefits would continue to receive benefits even if the Commissioner reversed the referee's decision.

Lens Crafters appealed to a Commissioner's representative who reversed the referee's decision. The Commissioner's representative issued the decision on August 26, 1993. Effective August 1, 1993, the legislature had amended the statutory double affirmation clause to provide that a final reversal of a double affirmation of benefits would terminate future benefits. The Commissioner's representative applied the August 1, 1993 amendment to Baron's claim and disqualified Baron from receiving benefits beyond the final decision. Baron appeals both the determination of misconduct and the Commissioner's application of the amendatory language to Baron's claim for benefits.

## ISSUES

1. Did the Commissioner's representative err by applying the August 1, 1993 statutory double affirmation amendment to a double affirmation that occurred before August 1, 1993?

2. Did the Commissioner's representative err by concluding that Baron had committed disqualifying misconduct?

## ANALYSIS

### I

The statutory double affirmation clause in effect when Baron received his double affirmation provided that, even if this affirmation were ultimately reversed, a claimant would continue to receive unemployment benefits. *See* Minn.Stat. § 268.10, subd. 2(6) (1992) (providing that if a referee

affirms an initial decision awarding benefits, a final reversal shall not result in disqualification). Effective August 1, 1993, the legislature amended the double affirmation clause to limit its effect to benefits already received. 1993 Minn.Laws ch. 67, § 8 (reversal following double affirmation results in prospective disqualification for benefits following week of final reversal).

Baron maintains that because an unemployment compensation referee affirmed a claims adjudicator's initial confirmation of benefits (double affirmation) before the effective date of the amendatory legislation, he is entitled to receive benefits even though the Commissioner's representative ultimately determined that he was disqualified because of misconduct. The Commissioner argues that the legislative amendment was properly applied to terminate Baron's benefits following the August 26, 1993 reversal of the referee's affirmation. Baron and the Commissioner dispute whether the Commissioner's action constituted a retroactive application of the August 1, 1993 amendment.

The legislature has reserved the right to amend or repeal any or all of the unemployment compensation laws; there is no vested private right against an amendment or repeal. Minn.Stat. § 268.22 (1992). The legislature therefore had the power to amend the double affirmation clause. But the amendment itself does not state whether the legislature intended that it should be applied to unemployment claims that had already been doubly affirmed before August 1, 1993.

█ Without a clear indication of the legislature's intent to make an amendment retroactive, it can only be applied prospectively. See Minn.Stat. § 645.21 (1992) (laws shall not be construed as retroactive unless clearly and manifestly intended by legislature). The rule requiring evidence of legislative intent is applicable whether the statute or amendment governs substantive law or remedies and procedures. Lovgren v. Peoples Elec., 380 N.W.2d 791, 795 (Minn.1986); Chapman v. Davis, 233 Minn. 62, 65, 45 N.W.2d 822, 824 (1951). The critical issue is whether the amendment, as applied to Baron's claim, results in a retroactive application.

Retroactive laws include retrospective and ex post facto enactments. A retrospective law relates back to a previous transaction and gives it some legal effect different from what it had under the law when it occurred. Cooper v. Watson, 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971); In re Wage & Hour Violations of Holly Inn, 386 N.W.2d 305, 312 (Minn.App.1986). Baron's double affirmation in June 1993, preceding the August 1993 amendment, resulted in unemployment compensation benefits. By ultimately denying Baron benefits following the August 26, 1993 reversal, the Commissioner applied the new law to reach back to a previous point in time and remove the double affirmation's legal effect. We view this construction as retroactive.

Because there is no evidence that the legislature intended the 1993 amendments to apply retroactively, we conclude the 1993 amendments should only be applied to unemployment claims that had not already been doubly affirmed before August 1, 1993. We recognize that there are cases that might support a contrary decision. See, e.g., Laue v. Production Credit Ass'n., 390 N.W.2d 823, 829 (Minn.App.1986) (concluding that application to a suit pending before the effective date of a statute was not retroactive application). But in light of the remedial purposes of the unemployment laws and because under the prior law Baron's right to unemployment benefits was established, we conclude that the 1993 amendments to the double affirmation clause should not be applied to eliminate Baron's entitlement to the benefits.

## II

█ Baron alternatively argues that irrespective of the amendment's effect, he is entitled to benefits because his behavior is not misconduct. Although our holding in section I resolves Baron's claim, we address the issue of misconduct because it is a separate and independent basis.

█ An individual who is discharged from a job for misconduct is disqualified from receiving unemployment compensation benefits. Minn.Stat. § 268.09, subd. 1(b) (1992). Dishonesty that is connected with employ-

**308**

ment may constitute misconduct. *See Whorton v. Department of Health & Human Servs.*, 368 N.W.2d 750, 752 (Minn.App.1985). Whether an employee has committed disqualifying misconduct is a mixed question of fact and law. *Colburn v. Pine Portage Madden Bros.*, 346 N.W.2d 159, 161 (Minn.1984).

■ The Commissioner's representative found that Baron was not credible because of his conflicting representations on whether or not he had trained Tina Daniels, a store manager whom he supervised. There is evidence in the record to support this finding. Baron submitted contradictory evidence on the issue of Daniels' training. Lens Crafters' evidence was consistent in showing that Baron had not trained all of the store managers, even though he told Lens Crafters that he had. Baron's failure to perform his job responsibilities, coupled with his dishonesty about that failure, constituted misconduct for unemployment compensation purposes.

Baron's reliance on *Fiskewold v. H.M. Smyth Co.*, 440 N.W.2d 164 (Minn.App.1989) is misplaced. In *Fiskewold,* the employee voluntarily quit his position after learning that it would be eliminated. Committing misconduct is distinguishable from voluntarily quitting. Even if we accepted Baron's claim that Lens Crafters intended to eliminate his position, Baron's own misconduct extinguished any potential claim for unemployment benefits.

### DECISION

We affirm the Commissioner's representative's decision that Baron committed disqualifying misconduct. But we conclude that the double affirmation clause as it existed prior to August 1, 1993 is applicable to those claims, including Baron's, that had been "doubly affirmed" at the time of the August 1, 1993 amendment. Therefore, a misconduct determination is not effective to disqualify Baron from continuing to receive unemployment benefits.

**Affirmed in part and reversed in part.**